[S.F. No. 24408. Feb. 7, 1983.]

WELLS FARGO BANK, as Trustee, etc, et al., Plaintiffs and Respondents, v. TOWN OF WOODSIDE et al., Defendants and Appellants.

380

---

**COUNSEL**

Paul B. Smith, Town Attorney, Harold S. Toppel, Deputy Town Attorney, and Atkinson & Farasyn for Defendants and Appellants.

James P. Botz, County Counsel (Sonoma), and Kathleen Farrelly, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Robert A. Biorn, Crist, Crist, Griffiths, Bryant, Schultz & Biorn, Kelly C. Wooster and Brobeck, Phleger & Harrison for Plaintiffs and Respondents.

OPINION

**REYNOSO, J.**—We are asked to decide whether a local subdivision ordinance which purports to require a surviving widow to obtain local approval of a division of land resulting from her application in the probate court to have a portion of a larger parcel of land set apart from the estate for her as a probate homestead is "in conflict" with the state probate homestead law. We conclude that it is.

The probate court is invested with broad discretion to accommodate the interests of the decedent's family and creditors. The locality has no power, in essence, to "veto" a division accomplished by the probate court by imposing criminal sanctions on the survivors or by refusing to permit any development of the parcels due to the noncomplying manner of their creation.

I

This case takes us back a few years. Lloyd Johnson, husband of plaintiff and respondent Anna I. Johnson, died in 1963. His will, admitted to probate the same year, named his widow and plaintiff-respondent Wells Fargo Bank as executors, and as trustees of a testamentary trust to which he devised the family residence on its 39.5-acre lot in the Town of Woodside, directing that the trustees sell it within three years of his death.

Mrs. Johnson's attorney wrote to the town clerk in February 1964, inquiring about the application of the town's subdivision ordinance to a probate homestead set aside by the probate court. The clerk replied that she was unaware of any case having arisen under the ordinance involving a probate homestead, but mentioned two cases which she thought might "fall in that category"; she also informed the attorney that she was referring his letter to the town attorney and the planning consultant. There was no further communication regarding the inquiry from either the town or Mrs. Johnson's attorney, however.

In September of 1965, during the administration of the estate, Mrs. Johnson did petition the probate court to set aside for her as a surviving spouse a probate homestead consisting of the house on approximately 6.6 acres. The petition was

unopposed, and an order setting apart the probate homestead as requested was entered on November 2, 1965. The decree of final distribution in 1966 distributed the remainder of the original property to the testamentary trust.

The trustees' efforts to sell the 32.9-acre parcel remaining after the probate homestead was set aside continued without success until 1978 (they had earlier obtained an extension of the period in which they were required to sell the property).[1] In September of that year, they evidently sent a "notice of sale" to the town manager, who responded with a letter in which he took the position that the trustees must "file for a land division" before the 32.9-acre trust property could be sold separately from the homestead parcel and, further, expressed concern about the former parcel's access to a road.

In 1979, the probate court approved a sale of the trust property "subject to a condition that a land division, if necessary, [would] be accomplished by December 31, 1979 or that the buyer, if satisfied that no land division [was] necessary, agree[d] that the condition ha[d] been satisfied or the buyer waive[d] the condition and elect[ed] to proceed with the purchase. . . ." The town manager continued to insist on compliance with the subdivision ordinance, so the trustees brought the instant action for declaratory relief, seeking a declaration that the "ordinance had and has no application to the creation in 1965 of the probate homestead [i.e., the 6.6-acre parcel], and that the [32.9-acre parcel] and the [6.6-acre parcel] are separate parcels of real property."

After a hearing, the trial court granted the trustees' motion for summary judgment and entered judgment in their favor and against the town. It declared, as requested, that the town's subdivision ordinance "had no application to the creation of the Probate Homestead" or to "the existence of the Probate Homestead and the Trust Property as separate parcels," that [t]he Probate Homestead . . . and the Trust Property . . . are, and since the creation of the probate Homestead on November 2, 1965 have been, separate legal parcels of real property for all purposes," and, finally, that the town did not have "any right, duty or power to refuse to grant any permit, or to refuse to do any act, or to do any act, under [the subdivision ordinance in effect in 1965] or [its successor, adopted in 1970] or any other ordinance of the Town of Woodside, on the basis that the creation of the Probate Homestead or the maintenance of the Probate Homestead and the Trust Property as separate parcels constituted or constitutes a land division or other violation of [the ordinances]."

---

[1] Apparently the trustees' difficulties in selling the property were at least in part related to concerns about the town's subdivision ordinance, though the parties dispute, and the record does not make clear, whether the concerns were in reference to the division of the original property into two parcels in 1965 or to proposed further subdivision of the trust property itself.

## II

Article XI, section 7, of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*"[2] (Italics added.) " ' "As defined by the cases the constitutional phrase 'conflict with general laws' . . . may arise in several different ways. It may grow out of the exact language of the state and municipal law [citations] or from a local attempt 'to impose additional requirements in a field that is preempted by the general law' [citations] or from the state's adoption of 'a general scheme for the regulation of a particular subject' [citation]." ' " (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 541 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d, 1036]; see also Blease, *Civil Liberties and the California Law of Preemption* (1966) 17 Hastings L.J. 517 [discussing the history of the preemption doctrine].)

Although the state probate homestead law and the local subdivision regulation demonstrably have distinct purposes—the former, protection of the decedent's family, and the latter, control of development within the community—we must decide whether the subdivision ordinance would, nonetheless, if given effect, "materially interfere" with the achievement of the state law's purposes in such a way as to indicate that the " 'paramount state concern [would] not tolerate [the] further or additional local action.' " (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 142 [130 Cal.Rptr. 465, 550 P.2d 1001]; *People* v. *Mueller* (1970) 8 Cal.App.3d 949, 954 [88 Cal.Rptr. 157] [no conflict where state Fish and Game Code, fully regulating fishing, and local water pollution control ordinance had different purposes, and the latter "only incidentally affect[ed] the preempted area"]; 58 Ops.Cal.Atty.Gen. 519 (1975).) Another instructive case is *In re Means* (1939) 14 Cal.2d 254 [93 P.2d 105], in which we held that state civil service regulations fully prescribed the qualifications of plumbers employed by state, so that application of a local licensing ordinance to such employees posed a "direct conflict" with the state law in attempting to impose additional requirements. (*Id.,* at p. 257.) We concluded: "Although the Legislature has enacted no statute regulating plumbing, if the city's ordinance is a valid exercise of power, then one whom the state has examined and found eligible for employment as a plumber and who has later entered the state civil service may be unable to work on state property because he cannot pass the examination of a city health officer or licensing board. *The result is a direct conflict of authority. Either the local regulation is ineffective or the state must bow to the requirement of its governmental subsidiary. Upon fundamental principles, that conflict must be resolved in favor of the state.*" (14 Cal.2d at p. 260; italics added.)

---

[2]Article XI, section 5, pertaining to charter cities' exercise of their paramount legislative authority in respect to "municipal affairs," is not applicable.

■ In the instant case, we have concluded that the local subdivision ordinance is in conflict with the state probate homestead law because requiring compliance with the ordinance in effecting divisions of property for homestead purposes would "materially interfere" with the probate court's exercise of its discretion in taking into account the family's and the creditors' interests in the property.

1. *The state probate homestead law.*

Upon Mrs. Johnson's application in 1965, the probate court had a mandatory duty to set aside for her a probate homestead.[3] The selection of the homestead and its boundaries were up to the sound discretion of the trial court, considering the value of the homestead, the financial condition of the estate and the rights of creditors, and subject to the paramount demands of the family. (*Estate of Claussenius* (1950) 96 Cal.App.2d 600, 611 [216 P.2d 485].) State law has vested the probate court with this broad discretion incident to its exclusive occupation of the field of probate law for the purpose of protecting the surviving family of a decedent "against the greed of creditors or its own improvidence" (*Estate of Adams* (1900) 128 Cal. 380, 383 [57 P. 569, 60 P. 965]). Probate Code section 664[4] has codified this principle, and the Law Revision Commis-

---

[3]Probate Code section 661 provided at that time: "If none has been selected, designated and recorded, or in case the homestead was selected by the survivor out of the separate property of the decedent, the decedent not having joined therein, the court, in the manner hereinafter provided, must select, designate and set apart and cause to be recorded a homestead for the use of the surviving spouse, and the minor children, or, if there be no surviving spouse, then for the use of the minor child or children, out of the community property or out of real property owned in common by the decedent and the person or persons entitled to have the homestead set apart, or if there be no community property and no such property owned in common, then out of the separate property of the decedent. If the property set apart is the separate property of the decedent, the court can set it apart only for a limited period, to be designated in the order, and in no case beyond the lifetime of the surviving spouse, or, as to a child, beyond its minority; and, subject to such homestead right, the property remains subject to administration." (Stats. 1931, ch. 281, § 661, p. 626.)

In 1980, the provisions governing probate homesteads were significantly amended. It is no longer mandatory for the probate court to set aside a homestead (Prob. Code, § 660, as amended by Stats. 1980, ch. 119, § 4), for example, and the property so set apart may be set apart only for a limited period, in no case beyond the life of the spouse or the minority of minor children (Prob. Code, § 661, subd. (d)).

[4]Section 664 provides: "In selecting and setting apart the homestead, the court shall consider the needs of the surviving spouse and minor children, the liens and encumbrances on the property, the claims of creditors, the needs of the heirs or devisees of the decedent, and the intent of the decedent with respect to the property in the estate and the estate plan of the decedent as expressed in inter vivos and testamentary transfers or by other means. The court, in light of the foregoing and other relevant considerations as determined by the court in its discretion, shall select as a homestead the most appropriate property available that is suitable for use as a dwelling and shall set apart in addition to the dwelling such adjoining property as appears reasonable for such a term and upon such conditions (including, but not limited to, assignment by the homestead recipient of other property to the heirs or devisees of the property set apart as a homestead) as appear proper." (Added by Stats. 1980, ch. 119, § 10.)

sion comment to it notes that "[t]he court is not limited to existing lots or parcels, but must set apart only so much of the property as is reasonable under the circumstances of the case." The order setting the homestead apart had the effect of vesting title in Mrs. Johnson. (Former Prob. Code, § 667, repealed by Stats. 1980, ch. 119, § 15; *Otto* v. *Long* (1904) 144 Cal. 144 [77 P. 885].)[5]

## 2. *The subdivision ordinance.*

The town's subdivision ordinance by its terms "appl[ied] to the subdivision[6] or other division of land for any purpose whatsoever within the Town of Woodside. For the purpose of this ordinance the division of land shall mean the division of a lot, tract, or parcel of land, as shown as a unit in the last preceding tax assessment roll of the Town of Woodside, into two or more lots, plots, sites or parcels for the purpose, whether immediate or future of sale, transfer, lease or building development. . . ." (§ 1.10.) The ordinance specifically imposes a duty of compliance with its procedures on "[e]very person desiring to divide a piece of land." (§§ 2.1, 2.2.)

The town's subdivision ordinance made it a misdemeanor punishable by a fine of up to $500 and incarceration in the county jail for up to six months to "violat[e] any of the provisions of the Ordinance."

■ ■ ■ ■ Moreover, Government Code section 66499.34 prohibits localities from "issu[ing] any permit or grant necessary to develop any real property which . . . has resulted from a division[] in violation of the provisions of . . . local ordinances enacted pursuant to this division if it finds that development of such real property is contrary to the public health or the public safety," and authorizing them to impose "those conditions which would have been applicable to the division of the property at the time the applicant acquired his interest in such real property. . . ."[7]

---

[5]Although there are numerous decisions stating that the jurisdiction of the probate court is limited and it cannot try questions of title between the estate and third parties (see, e.g., *Estate of Niccolls* (1912) 164 Cal. 368, 373 [129 P. 278], here, there is no issue whether the property was part of the estate, and the fundamental jurisdiction of the probate court is thus undisputed.

[6]Under the ordinance (§ 2.2) and the state Subdivision Map Act (former Bus. & Prof. Code, § 11535, as amended by Stats. 1963, ch. 1551, § 1, pp. 3136-3137, repealed by Stats. 1974, ch. 1536, § 1, p. 3464), a "subdivision" was a division into five or more parcels.

[7]Government Code section 66499.34 provides:

"No local agency shall issue any permit or grant any approval necessary to develop any real property which has been divided, or which has resulted from a division, in violation of the provisions of this division or of the provisions of local ordinances enacted pursuant to this division if it finds that development of such real property is contrary to the public health or the public safety. The authority to deny such a permit or such approval shall apply whether the applicant therefor was the owner of record at the time of such violation or whether the applicant therefor is either the current owner of record or a vendee of the current owner of record pursuant to a con-

### 3. *The conflict between the state law and the local ordinance.*

The probate court, we have noted, is supposed to consider all "relevant considerations" in selecting the homestead. Local subdivision and zoning regulations, which reflect the public's interest in controlling development to protect health and safety, certainly qualify as such. Accordingly, a probate court presumably could, in its discretion, require the survivors and the estate to seek local approval of a requested division of property, in recognition of said interest. (Since 1980, the probate court has discretion to decide whether to set aside a homestead at all (Prob. Code, § 660).) However, to therefore recognize such an ordinance as effective and *binding* on the probate court or on a party seeking a probate homestead, a violation triggering criminal sanctions or restrictions on development, would have the effect of making the regulations and the restrictions imposed by the locality as conditions of its approval of the division *paramount* over every other consideration. This would constitute a direct impairment of the probate court's discretion since the ordinance addresses the very act of dividing the property (in contrast to minimum-lot and other zoning restrictions which may do so indirectly but which are nevertheless binding and effective as to such divisions, as respondents concede).

It should be noted that the town goes out of its way to disclaim any contention that the probate court was bound by and violated the ordinance. The town concedes that the 1965 order "was, and still is, fully effective for all purposes

---

tract of sale of the real property with, or without, actual or constructive knowledge of the violation at the time of the acquisition of his interest in such real property.

"If a city or a county issues a permit or grants approval for the development of any such real property, it may impose those conditions that would have been applicable to the division of the property at the time the applicant acquired his interest in such real property, and which has been established at such time by this division or local ordinance enacted pursuant thereto, except that if a conditional certificate of compliance has been filed for record under the provisions of subdivision (b) of Section 66499.35 only such conditions stipulated in that certificate shall be applicable."

This provision succeeded a similar one enacted in 1972, former Business and Professions Code section 11528.1. (Added by Stats. 1972, ch. 706, § 2, p. 1289, repealed by Stats. 1974, ch. 1536, § 1, p. 3464.) Respondents suggest that, since there was no such provision in the Subdivision Map Act in 1965, the statute cannot now be applied to authorize the denial or conditioning of a permit. It is the "prevailing rule," however, that, when an application for a building complied with the requirements in effect when it was filed, but in the interim between the application and the appeal from its denial, a new ordinance is enacted which would prohibit the development, "a reviewing court will apply the law in existence at the time of its decision rather than at the time the permit was denied. [Citation.] The purpose of the rule is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions." (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 125 [109 Cal.Rptr. 799, 514 P.2d 111].) The only recognized exception to this rule applies to cases where a subsequent ordinance is enacted with the purpose of frustrating the developer's plans. (*Id.,* at p. 126, fn. 11; *Atlantic Richfield Co.* v. *Board of Supervisors* (1974) 40 Cal. App.3d 1059, 1063-1065 [115 Cal.Rptr. 731].)

relating to the probate proceedings."[8] In its view, "[t]he violation would occur upon any subsequent attempt by Mrs. Johnson and the other beneficiaries to *develop or transfer* the [39.5-acre] property as separate parcels without prior compliance with the town's Subdivision Ordinance." According to the town, then, it is possible for the property to have been divided by the probate court for its own purposes—removal of the probate homestead from the estate to be administered and insulation from the claims of creditors (though, in this case, it appears to have been set aside to avoid the will's mandate to sell the property)—but to have remained one parcel for purposes of the subdivision ordinance, which addresses the town's legitimate concern about orderly development. It is intriguing to contemplate this almost metaphysical notion of property which is at once one and two parcels. (Cf. *Hill* v. *City of Manhattan Beach* (1971) 6 Cal.3d 279, 282-285 [98 Cal.Rptr. 785, 491 P.2d 369] [fact that two adjacent parcels were purchased separately did not establish that they were separate "lots" within meaning of zoning ordinance which defined "lot" in such a way that the two parcels did not qualify]; *In re Estate of Sayewich* (1980) 120 N.H. 237 [413 A.2d 581] [testamentary devise of real property as four separate parcels did not require local subdivision approval since probate law is concerned only with passage of title, and had no bearing on use or development of property].) We are constrained to reject the town's argument based on the language of the ordinance, however. As previously noted, title to the 6.6-acre parcel was vested in Mrs. Johnson by the order setting aside the probate homestead in 1965 (*Fealey* v. *Fealey* (1894) 104 Cal. 354, 360 [38 P. 49]; *Otto* v. *Long, supra,* 144 Cal. at p. 146; former Prob. Code, § 667, repealed by Stats. 1980, ch. 119, § 15, p. 285; see also 24 Cal.Jur.3d, Decedent's Estates, § 475, p. 771) and the 1966 decree of final distribution confirmed title to the 32.9-acre parcel in the testamentary trust (see Prob. Code, § 300). The town's 1958 ordinance applied by its terms to the division of "a lot, tract or parcel of land, *as shown as a unit in the last preceding tax assessment roll . . . .*" (Italics added.) (See also Gov. Code, § 66424 [defining "subdivision" with reference to property shown as a unit or as contiguous units *with the same owner* on the latest tax assessment roll]; former Bus. & Prof. Code, § 11535 repealed by Stats. 1974, ch. 1536, § 1, p. 3464.) Although the record does not contain the 1970 ordinance, there is no reason to believe its definition is different. Respondents asserted at oral argument that the latest assessment roll reflects the separate ownership of the homestead and the trust property. There being no reason to doubt that this is so, the town's suggestion that any violation of the subdivision ordinance is prospective only carries with it its own rebuttal.

Thus, if the town's subdivision ordinance is to have any application to the property purportedly divided in 1965, it must be on the basis that the division was *then* violative of the ordinance. Notwithstanding its express assurance that

---

[8]Amicus County of Sonoma, on the other hand, insists that the court did violate the subdivision ordinance in 1965. Amicus' argument is considered *infra.*

it makes no such contention, the town does appear to suggest that Mrs. Johnson might be characterized as a "person desiring to divide the property" who was obliged under the ordinance to seek local approval of the division she sought from the probate court.[9] Concerning the appropriateness of holding her liable for violation of the ordinance when the division was actually effected by the court, the town cites *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602 [40 Cal.Rptr. 505].

In *Pratt,* a group of people took title to a 46-acre property as joint tenants, then filed an action for partition, which was granted. Each of the owners then went on to divide his or her parcel into four or less smaller ones, so that a total of 38 parcels resulted. When the county refused to issue them building permits pursuant to an emergency zoning ordinance requiring a minimum lot size of three acres, the owners of the parcels insisted that they came within a provision of the county code that zoning would not affect the right to build on a lot "providing such was a separate lot or parcel of record or as shown on a Map of a recorded subdivision on the effective date." The county responded that the parcels had to have been legal lots as of the date of the zoning change, and contended that the lots in question were created in violation of the state Subdivision Map Act. The appellate court agreed, stating: "One of the appellants set the partition in motion by filing the complaint; the others, represented by the [same] counsel . . . , stipulated to the interlocutory decree. Under the circumstances, it is fair to say that appellants 'caused' the dividing of the land even though judicial approval . . . was obtained." (*Id.,* at p. 605.)[10]

*Pratt* is distinguishable, however, on the grounds that it involved a scheme to avoid the requirements of the state Subdivision Map Act and the parties sought partition of the property by a court *solely* for that purpose, since they could

---

[9]The town does not suggest that the probate court itself was a "person desiring to divide" the 39.5-acre parcel. Amicus Sonoma County does make that argument, but it lacks merit. In *Morris* v. *Reclamation District No. 108* (1941) 17 Cal.2d 43 [109 P.2d 1], this court held that a county treasurer who, as trustee of a reclamation district, split a property which was subject to sale into several parcels and sold them separately was not included within the definition of a subdivider. (See also 64 Ops.Cal.Atty.Gen. 815 (1981).) Amicus seeks to distinguish *Morris,* noting that the rule excluding government agencies from the operation of general statutory provisions applies "only if their inclusion would result in an infringment of sovereign governmental powers." (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250]; see also 62 Ops.Cal.Atty.Gen. 140 (1979).) As the ensuing discussion will demonstrate, however, that application of the subdivision ordinance to the setting aside of a probate homestead would definitely impair the probate court's exercise of its statutory authority.

[10]*Pratt's* holding that the right of joint tenants to seek partition of property could not be used to avoid the Subdivision Map Act has been codified in Code of Civil Procedure section 872.040: "Nothing in this title excuses compliance with any applicable laws, regulations, or ordinances governing the division, sale, or transfer of property." (Added by Stats. 1976, ch. 73, § 6, pp. 110-111.) (See also 64 Ops.Cal.Atty.Gen. 762 (1981) [discussing § 872.040].)

have so divided without approval (48 Cal.Jur.3d, Partition, § 4, p. 243). (*Ibid.*) In contrast, Mrs. Johnson had to apply to the probate court in order to have a homestead set aside for her, and her application did not manifest any intention to avoid the town's subdivision ordinance. Moreover, critically, the determination of the boundaries of the homestead was entirely up to the probate court's discretion; by her application Mrs. Johnson merely triggered the probate court's exercise of its statutory duty to effect a just accommodation of the family's and the creditor's interests. Whereas in *Pratt* it was the parties' seeking partition, rather than the court's pro forma act of approving it, which was the "cause" of the division, in the instant case, though the language of the ordinance is broad enough to embrace Mrs. Johnson, and though it happens that the probate court divided it as she requested, still the division was governed ultimately by the court's discretion pursuant to the state probate homestead law.

Consideration of the effects of holding the subdivision ordinance applicable to Mrs. Johnson's act of petitioning for the setting aside of a probate homestead in 1965 illustrates the ordinance's potential for interference with the probate court's exercise of its statutory discretion. Although the town has not attempted to prosecute her under the ordinance's provision making it a misdemeanor punishable by a fine of up to $500 and imprisonment in the county jail for up to six months to "violat[e] any of [its] provisions," we think the homestead provisions of the state's probate scheme disclose a state interest in the " 'provid[ing] a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will . . .' " (*Strangman* v. *Duke* (1956) 140 Cal.App.2d 185, 190 [295 P.2d 12], quoting *Estate of Fath* (1901) 132 Cal. 609, 613 [64 P. 995]; *Estate of Adams, supra,* 128 Cal. at p. 383) which will not countenance applications of a penal provision of a local ordinance to a widow seeking to exercise her right to have a homestead set aside.[11]

The prohibition on issuance of "any permit or . . . any approval necessary to develop any real division . . ." (Gov. Code, § 66499.34) would no less seriously impinge on the probate court's discretion in selecting the boundaries of the homestead since any division not approved by the locality may leave the resulting parcels much reduced in value due to their unavailability for development and certainly leaves them subject to conditions which ignore the division of the property, and attendant transfer of title, accomplished by the probate court. A probate court's setting apart of a portion of a piece of real property as a

---

[11]Other problems might also arise from an attempt to apply a criminal sanction in this context. The ordinance was obviously not written with this kind of division of property in mind, and issues of notice and vagueness might be presented. The ordinance by its terms governs "person[s] desiring to divide" property (§§ 2.1, 2.2). Is a creditor who opposes setting aside the entire property as a homestead and prevails on the probate court to set apart only a portion thereof a "person desiring to divide" the property? If so, how can he compel the owner to file an application for approval of the division, as is apparently required by the ordinance (§ 5.2)?

homestead reflects an implicit determination that the remainder of the property is not necessary to preserve the homestead's character and use as a home for the decedent's family (see *In re Smith* (1893) 99 Cal. 449, 450 [34 P. 77]) and should be retained in the estate and subject to the claims of creditors and beneficiaries. If, by its very act of dividing the property in this case, the probate court were held to subject both resulting parcels to a severe diminution of value, due to expected problems to be encountered in developing them, the ability of the court to respond to the perceived needs of such creditors and beneficiaries, and even the decedent's family (which may find itself prevented from remodeling the residence, for example), would be compromised.

Nor could the probate homestead scheme under which the property was divided in 1965 tolerate the town's imposition of whatever conditions it could have imposed before they were divided, in essence ignoring the action of the probate court and the resulting separate ownership of the parcels. To condition development on their joining together to obtain approval, despite the fact that neither owner can compel the other to do so, ignores the fact that, as a result of the probate court's action, the parcels have come under separate ownership. (Cf. *Keizer* v. *Adams* (1970) 2 Cal.3d 976, 980 [88 Cal.Rptr. 183, 471 P.2d 983] [holding that Subdivision Map Act did not "require the innocent purchaser to suffer for a violation by his grantor . . . ," rejecting as "untenable" a suggestion that the purchasers be required to join together to attempt to obtain belated approval of the subdivision].)

The town points out that *Keizer* recognized a county's "equitable" right to require "as a condition to the issuance of a building permit, compl[iance] with such reasonable conditions as the county may require in the public interest and for the protection of plaintiff's property and of neighboring property, and perform[ance] or agree[ment] to perform or construct such reasonable improvements with respect to [the owner's] lot as could have been required of [the owner's] grantor as a condition of dividing the latter's tract of land under the provisions of the Subdivision Map Act and the county subdivision ordinance at the time of the sale . . . of [the] lot." (2 Cal.3d at p. 981.) The "equitable" right in *Keizer,* though, was predicated on an *illegal* division by the current owners' grantor, whereas, here, there was no "violation" of the local subdivision ordinance, whose application to the division in question was preempted by state law.

The trial court correctly declared that the town has no right "to refuse to grant any permit, or to refuse to do any act, or to do any act, . . . on the basis that the creation of the probate homestead . . . constituted a land division or other violation [of the subdivision ordinance]." Consequently, the judgment must be affirmed.

Again, we emphasize that our holding is only that a local subdivision ordinance cannot bind either the probate court or decedent's family in *derogation* of the court's exercise of its statutory discretion under the probate law. Nothing in our opinion is meant to discourage probate courts from deciding, in their discretion, to require the survivors and the estate to seek local subdivision approval as a condition of setting aside a probate homestead.

The judgment is affirmed.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., and Broussard, J., concurred.