The **LEAGUE OF RESIDENTIAL NEIGHBORHOOD ADVOCATES,** et al.

v.

**CITY OF LOS ANGELES,** et al.

**Case No. CV 03–04890 CAS (Ex).**

United States District Court, C.D. California.

June 15, 2009.

Leslie Werlin, Plaintiffs.

Tayo Popoola, for Defendant.

CHRISTINA A. SNYDER, District Judge.

### Proceedings: Plaintiff's Motion for Award of Attorneys' Fees (filed 5/8/2009)

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises out of a dispute that has lasted more than a decade. It has spawned numerous administrative, state, and federal court proceedings directed to the question of whether the members of Congregation Etz Chaim may conduct religious services at a house located at 303 South Highland Avenue ("the Highland property") in Los Angeles, California ("the City").

### A. The Commencement and Settlement of the *Congregation Etz Chaim* Action

The Highland property is located in an area that is zoned R–1 (primarily residential) pursuant to Los Angeles Municipal Code § 12.08. As a result, Congregation Etz Chaim applied to the City for a conditional use permit ("CUP") to operate a house of prayer at the Highland property. On October 16, 1996, the City's Zoning Administrator denied this application. The Zoning Administrator's decision was upheld by the Board of Zoning Appeals and sustained by the Los Angeles City Council.

On July 10, 1997, Congregation Etz Chaim and the individual members thereof (collectively, "the Congregation") commenced an action against the City, CV 97–5042–CAS (the *"Congregation Etz Chaim* action") alleging that the City's denial of its application for a CUP violated federal and state law. Following the enactment of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"), the Congregation filed a second amended complaint, alleging that, in addition to its other claims for relief, the City's actions violated RLUIPA. On September 27, 2001, the Congregation and the City entered into a written settlement agreement ("the Settlement Agreement") resolving this action. Subsequently, on February 1, 2002, the Court entered a Notice of Dismissal and Order ("the Dismissal Order") dismissing this case

with prejudice pursuant to the terms of the Settlement Agreement. The Settlement Agreement provided that religious worship could take place at the Highland property subject to certain conditions. Dismissal Order, Ex. A (Settlement Agreement) § VI.

## B. The Instant Action

On July 10, 2003, the League of Residential Neighborhood Advocates and individual Hancock Park homeowners (collectively, the "LRNA"), none of whom were parties to the *Congregation Etz Chaim* action, filed the instant action in this Court against Congregation Etz Chaim, the Rubin Family Exemption Trust, the City, then Mayor James Hahn, and City Attorney Rockard Delgadillo (collectively, "City defendants"). *League of Residential Neighborhood Advocates v. City of Los Angeles,* CV 03–4890 CAS (Ex). The LRNA sought (1) a declaration that the Settlement Agreement is invalid under federal and state law and (2) an injunction prohibiting use of the Highland property as a place for religious worship on the grounds that such use does not conform to applicable zoning laws and violates various provisions of the California and United States Constitutions. In an order dated September 15, 2003, the Court granted a motion by defendants Congregation Etz Chaim and the Rubin Family Exemption Trust to dismiss the LRNA's complaint with leave to amend. The Court stated that "[t]he complaint should be amended to allege the real question at issue, which is whether plaintiffs have standing to collaterally attack the settlement reached in the previous action, including whether the City had the power to settle the challenges posed to it in the previous action." The LRNA filed their first amended complaint on October 9, 2003, against Congregation Etz Chaim, Mayor James Hahn, and City Attorney Rockard Delgadillo ("the City defendants"). On December 22, 2003, the Court granted Congregation Etz Chaim's motion to dismiss the first amended complaint with prejudice. The Court stated in relevant part that:

> One basic and fundamental assumption underlies claims 1 through 9. The assumption is that the settlement agreement granted Congregation [Etz Chaim] a CUP without going through the procedures required by the ordinances of City and California statutory law before a CUP was granted. Plaintiff argues that the right of nearby residents to take part in the hearing process on the application for a CUP is a property right which cannot be evaded without violating the Due Process Clause and other constitutional provisions. The defect in plaintiff's argument is that the premise is wrong. The settlement agreement did not create a CUP. It was reached on a compromise basis with Congregation and City each giving up certain strongly held positions to obtain a settlement ... The City Charter, § 273(c), expressly allows City to settle litigation against it. This settlement agreement was negotiated thoroughly before Magistrate Judge Eick, was submitted to the City Council after final approval by the attorneys, was considered twice by the City Council, and approved.

*See* December 22, 2003 Order at 5–6. The Court concluded that "the settlement agreement does not create a CUP within the meaning of the zoning acts," and therefore "all of the deficiencies alleged against it fail." December 22, 2003 Order at 6–7. The City defendants filed a motion for judgment on the pleadings on March 5, 2004. On April 22, 2004, the Court granted their motion with leave to amend, concluding that the "law of the case established by the December 22, 2003 Order [bars] any claim predicated on the theory that the Settlement Agreement is a de facto CUP." *See* April 22, 2004 Order at 8.

The LRNA filed its second amended complaint ("SAC") on May 6, 2004. Rather than alleging that the Settlement Agreement was a "de facto CUP," the SAC alleged that the City granted plaintiffs "a contractual CUP or non-statutory contractual use permission." *See, e.g.,* Second Amended Compl. ¶ 47. The first three claims of the SAC sought a declaration that the settlement was invalid based on (1) violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (2) violations of the Due Process Clause of Article I, Section 7 of the California Constitution; (3) violations of state law. The fourth claim of the SAC sought mandamus to compel enforcement of the City's zoning laws. The next two claims sought to enjoin the use of the Highland Property as a place for religious worship pursuant to 42 U.S.C. § 1983 on the basis of violations of (1) the Establishment Clause of the First Amendment to the United States Constitution; and (2) the Equal Protection Clause of the United States Constitution. Finally, the SAC also sought an injunction based on (1) the Establishment Clause of Article I, § 4 of the California Constitution; (2) the Equal Protection Clause of Article I, § 7 of the California Constitution; and (3) nonconforming use in violation of applicable zoning laws.

On July 13, 2004, the Court granted with prejudice the City defendants' motion to dismiss the SAC. The Court held that because the Settlement Agreement was neither a CUP or a "de facto CUP," by entering into the Settlement Agreement, the City had not violated the Los Angeles Municipal Code or the California Government Code provisions governing the issuance of a CUP or the procedures for settling municipal litigation. The Court also rejected the LRNA's arguments that the Settlement Agreement constituted an impermissible delegation of City authority or that it violated their rights under the Fourteenth Amendment's Due Process or Equal Protection Clauses or the First Amendment's Establishment Clause.

Plaintiffs thereafter appealed the Court's December 13, 2003 and July 13, 2004 orders. On May 13, 2006, the Ninth Circuit remanded the instant action to this Court for reconsideration of the July 13, 2004 order in light of the California Court of Appeals' decision in *Trancas v. City of Malibu,* 138 Cal.App.4th 172, 41 Cal. Rptr.3d 200 (2006). In *Trancas,* the court invalidated a city's decision to settle a lawsuit by granting the functional equivalent of a zoning variance without complying with statutory zoning procedures. *Id.* at 181–82, 41 Cal.Rptr.3d 200. On August 14, 2006, based on the Court's conclusion in its earlier orders that the Settlement Agreement was not a de facto CUP, the Court distinguished *Trancas,* and affirmed its July 13, 2004 order granting the City defendants' motion to dismiss the second amended complaint.

The LRNA appealed again, and on August 21, 2007, the Ninth Circuit reversed. *League of Residential Neighborhood Advocates v. City of Los Angeles,* 498 F.3d 1052 (9th Cir.2007) ("*LRNA*"). The court pointed out that pursuant to Los Angeles Municipal Code §§ 12.08(A) and 12.24(T)(3)(b), the operation of a "house of worship" in an R–1 district requires the issuance of a CUP, and that before such a permit may be issued, there must be public notice and a hearing, factual findings, and an opportunity for appeal. *Id.* at 1055–56. The court stated that a federal settlement agreement cannot provide a means for state officials to evade state law. *Id.* at 1055 (citing *Keith v. Volpe,* 118 F.3d 1386, 1393 (9th Cir.1997) (holding that state officials "could not agree to terms which would exceed their authority and supplant state law")). Thus, a municipality cannot waive or consent to a violation of

its zoning laws, and any agreement by the municipality to circumvent its zoning laws is "invalid and unenforceable." *Id.* at 1056. Because the Settlement Agreement allowed the Congregation to engage in congregational worship—a "conditional use" under the Los Angeles Municipal Code—without obtaining a CUP, the court held that the Settlement Agreement was invalid and unenforceable under California law. *Id.* at 1056–57.

The court went on to state, however, that the City would not have to comply with its zoning laws if such compliance had led to or would result in a violation of federal law. *Id.* at 1057–58. Thus, the court held, upon properly supported findings that the Settlement Agreement is *required* to remedy an *actual* violation of federal law, the Settlement Agreement would be enforceable, notwithstanding its conflict with the City's zoning laws. *Id.* at 1058. But the Court had made no findings that federal law—in this case, RLUIPA—had been violated or would be violated. In the absence of such findings, the court concluded, because the Settlement Agreement provided for violations of the City's zoning laws, this agreement was invalid and unenforceable. *Id.*

After the Ninth Circuit's decision, the LRNA moved in the Ninth Circuit for an award of attorneys' fees incurred on appeal pursuant to 42 U.S.C. § 1988. The City opposed the LRNA's motion. On May 13, 2008, the Ninth Circuit issued an order which stated, in its entirety "Appellants League of Residential Neighborhood Advocates, et al.'s motion for attorney fees in the amount of $116,319.90 is GRANTED."

On April 24, 2009, in light of the Ninth Circuit's decision in this action, the Court entered judgment in favor of the LRNA and against defendants, finding the settlement agreement between defendants to be invalid and unenforceable under California law.[1]

### C. The Instant Proceedings

On May 8, 2009, the LRNA filed the instant motion for award of attorneys' fees against defendant City of Los Angeles (the "City"). The City filed an opposition on June 1, 2009. A reply was filed on June 8, 2009. A hearing was held on June 15, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. DISCUSSION

Under 42 U.S.C. § 1988 ("§ 1988"), in an action brought under, *inter alia*, 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ." "[S]uccessful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Sethy v. Alameda County Water District,* 602 F.2d 894, 897 (9th Cir.1979). "The defendant has the burden of showing special circumstances warrant a denial of fees and the defendant's showing must be a strong one." *Herrington v. County of Sonoma,* 883 F.2d 739, 743 (9th Cir.1989).

The LRNA argues that it is entitled to an award of attorneys' fees and expenses incurred in relation to the district court proceedings, because (1) such an award is compelled by the law of the case doctrine and (2) as the prevailing party, it is entitled to attorneys' fees under 42 U.S.C. § 1988.

---

**1.** On May 28, 2008, the Congregation filed a new application for a CUP with the City. On May 5, 2009, the Court dismissed the *Congre-* *gation Etz Chaim* action without prejudice on the ground that it was not prudentially ripe.

■ "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993). "The doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." *Id.* "[E]ven summarily treated issues become the law of the case." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir.1995).

The LRNA argues that the law of the case doctrine extends to the Circuit's decision on plaintiff's motion for attorneys' fees. Mot. at 3. In other words, because the Ninth Circuit found that the LRNA was entitled to its attorneys' fees expended on the appeal under 42 U.S.C. § 1988, the LRNA is necessarily entitled to such fees incurred in relation to the district court proceedings. Reply at 1, citing *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994) ("[t]he same standard is applied when analyzing requests for attorney fees at both the trial and appellate levels").

The City counters that the law of the case doctrine has no application here, because the Ninth Circuit did not decide on the merits the issue of fees in the district court proceedings. The City cites *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir.1982). In *Liberty*, the district court denied defendant's motion to amend an injunction and denied defendant's motion for costs. *Id.* at 440. On appeal, the Ninth Circuit reversed with regard to the motion to amend and granted defendant's motion for their costs on appeal, but was silent on the district court's denial of costs.

*Id.* On remand in the district court, the court declined to award costs, finding that the original denial of costs in the district court had been affirmed by the Ninth Circuit, and an award of costs was therefore barred. *Id.* The Ninth Circuit rejected plaintiff's argument that its decision reversing the district court and remanding decided the issue of the award of costs. *Id.* at 441. The *Liberty* court held that "[l]ower courts are free to decide issues on remand so long as they were not decided on a prior appeal ... Thus, the law of the case would preclude the district court from reconsidering only issues decided explicitly or by necessary implication in this court's previous disposition." *Id.* at 441. The court further stated

> Although in its previous appeal the state contested the district court's denial of costs, our prior disposition awarded the state only its costs on appeal. The disposition was completely silent as to the issue of costs in the district court. Liberty argues that this silence amounts to an implicit denial of costs in the district court. There is no reason, however, why our earlier silence did not simply leave the matter of costs open for consideration by the district court on remand.

*Id.* The City analogizes to *Liberty Mutual Ins. Co.* and argues that "the argument against the application of the law of the case doctrine is even stronger in this matter where the Ninth Circuit's motion panel was only confronted with the issue of fees and costs for the appellate work. The issue of attorney's fees in the district court for the trial work was neither before the Ninth Circuit nor decided by that court." Opp'n at 3; *see also Mirchandani v. U.S.*, 836 F.2d 1223, 1225 (9th Cir.1988) ("district courts are not free to decide issues on remand that were previously decided either expressly or by necessary implication on appeal ... Such a rule applies, howev-

er, only with respect to issues previously determined by the appellate court. It has no application where no appellate decision had issued on the merits").

The LRNA replies by citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 169 (11th Cir.1994). In *Burger King*, the district court awarded fees under the Lanham Act following a ruling by the Eleventh Circuit that fees were appropriate at the appellate level. Defendant appealed the award of fees in the district court. In affirming, the Eleventh Circuit held that:

> this court explicitly held that [plaintiff] was entitled to recover attorney's fees when it granted [plaintiff's] petition for attorney fees on appeal. In reaching that decision, this court decided, through necessary implication, that this case was exceptional within the meaning of Section 35 of the Lanham Act. 15 U.S.C. § 1117(a). This implicit ruling makes exceptionality the law of the case, binding this court in the present appeal. Therefore, the law of the case dictates that [defendant] may not challenge the district court's authority to award attorney's fees, only the amount. Because [defendant] only challenged the basis for the award, not the amount of the award, we affirm the district court.

*Id.*

The Court finds that although, in awarding attorneys' fees in the appellate action, the Ninth Circuit did not directly address the question of whether the LRNA is entitled to attorneys' fees for work in the *district court* proceedings, the Ninth Circuit may have, by implication, made findings that are relevant to the issue of whether attorneys' fees are warranted. The Court is bound by any such findings as the law of the case. The Court therefore examines the specific elements of a request for attorneys' fees under § 1988.

**A. Prevailing Party**

█ Section 1988 provides that attorneys' fees are awarded to the *prevailing party*. A party is prevailing when it has "succeeded on any significant issue in the litigation which achieved some benefit the parties sought in bringing suit." *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 791–792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

The Ninth Circuit has held that "even unadjudicated claims can support an award of attorneys' fees under § 1988 as long as those claims are substantial and were not alleged solely to support the fee award." *Native Village of Venetie IRA Council v. Alaska*, 155 F.3d 1150, 1152 (9th Cir.1998). "Therefore, the [requesting party] need only show that at least one of their claims falls within the remedial scheme of § 1983 and remained a sufficiently substantial claim throughout the litigation to trigger the fee-shifting provision of § 1988." *Id.*; *see also Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir.2003) ("[o]ur precedent is clear that if [plaintiff] states a § 1983 claim based on the alleged violation of constitutional rights that supports federal question jurisdiction, that is sufficient to support award of attorney's fees, even if the constitutional claim is avoided by the court. It is not necessary for [plaintiff] to prevail on the constitutional claim").

The Ninth Circuit has held that "for the purpose of qualifying a prevailing party, an unaddressed, fee-supporting claim supports an award of fees if it is both *substantial* and *arises from a common nucleus of operative fact* with a dispositive, non-fee-supporting claim addressed by the court." *Gerling Global Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 808 (9th Cir. 2005) (emphasis added). "Claims arise from a common nucleus of operative fact where fee-supporting claims are so interrelated with non-fee claims that plaintiffs

would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 808–09.

█ The LRNA argues that it is the prevailing party in this action for the purposes of § 1988. First, the LRNA argues that the law of the case requires the Court to find the LRNA to be the prevailing party, because the Ninth Circuit has awarded fees to the LRNA under § 1988, despite the fact that the LRNA prevailed in this action on the basis of its state law claim, rather than based on its § 1983 claims. Mot. at 4. The LRNA notes that it argued on appeal that its victory qualified it for a fee award because its state law claims and § 1983 claims arose out of a common nucleus of operative facts, and because its 1983 claims were substantial; the LRNA notes that while the City challenged the LRNA on these issues, the LRNA prevailed and was awarded its fee request in its entirety. Mot. at 4.

█ Second, the LRNA argues that, even if the law of the case doctrine were not applicable, there is no doubt that the LRNA was the prevailing party in this action. Mot. at 6. First, the LRNA argues that the § 1983 claim arose "from a common nucleus of operative fact with the dispositive, non-fee-supporting claim addressed by the court" because all of the LRNA's claims arose out of the City's contractual grant of land use permission, and the Congregation's use of Highland Property pursuant to the Settlement Agreement. Mot. at 9. *See Gerling,* 400 F.3d at 808. Furthermore, the LRNA argues that the Court of Appeals recognized this Court's jurisdiction over the LRNA' state law claims, and that this recognition "is necessarily a holding that the LRNA's state law claims derive from a common nucleus of operative facts and are

such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." Mot. at 9, citing *Trustees of Construction, etc. v. Desert Valley Landscape,* 333 F.3d 923, 925 (9th Cir.2003) (explaining supplemental jurisdiction test); *League of Residential Neighborhood Advocates v. City of Los Angeles,* 498 F.3d 1052, 1055 (9th Cir.2007) ("[t]he district court had subject matter jurisdiction over the League's constitutional claims under 28 U.S.C. §§ 1331, 1343(a), and over its state claims under 28 U.S.C. § 1367(a)").

█ Furthermore, the LRNA argues that it raised "substantial federal constitutional claims" in this action Mot. at 10; *see Gerling,* 400 F.3d at 808. Specifically, a claim is substantial for purposes of a § 1988 fee request if it meets the "substantiality" test for purposes of federal question jurisdiction. *See Southwestern Bell Telephone Co.,* 346 F.3d at 551 ("[a] claim is substantial if it supports federal question jurisdiction"). A claim is substantial unless it is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1035 (9th Cir.1985). The LRNA argues that because the Ninth Circuit determined that this Court has jurisdiction over the LRNA's federal constitutional claims, the substantiality test is necessarily satisfied. Mot. at 10. Furthermore, the LRNA argues that the LRNA's § 1983 claims could not be considered to be "insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit ..." *Southwestern Bell Telephone Co.,* 346 F.3d at 551.[2]

---

2. The LRNA acknowledges that this Court dismissed LRNA's § 1983 claim at the pleadings stage, but argues that this does not mean that the claim was insubstantial for the pur-

The City incorporates by reference the arguments it made before the Ninth Circuit as to why the LRNA is not a prevailing party, namely: (1) the only issued litigated by the LRNA and decided by this Court and the Ninth Circuit was a limited issue of state law; (2) there is no common nucleus of operative facts between the state law issue and the federal claims on which it prevailed. However, the Court finds these arguments to be unavailing. The Ninth Circuit in this case necessarily determined that the LRNA was a prevailing party for the purpose of a fee award pursuant to § 1988. The Court is bound by this finding. Furthermore, even if the law of the case doctrine did not apply, the Court finds that the LRNA did raise substantial federal claims in this case, and the state and federal claims in this action necessarily arise from a common nucleus of operative facts: the Congregation's use of the Highland Property pursuant to the Settlement Agreement.

## B.  Whether Fees are Unjust

■ "Successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Sethy*, 602 F.2d at 897. The "special circumstances" test is narrowly construed. *See Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989). The Ninth Circuit generally examines two factors in determining whether a case involves "special circumstances" that would justify the denial of fees: "(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees." *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir.1999).

■ The City argues that awarding attorneys' fees would not further the purpose of § 1988, Opp'n at 6. First, the City argues that it is indisputable that this Court had a hand in the settlement agreement at the center of this case. Opp'n at 6. Furthermore, the City argues that "Judge Hupp would later reflect on, defend, and justify the settlement agreement at various hearings on motions to dismiss this action." Opp'n at 7, citing 12/22/03 Hearing Trans. at 392:7–14 (Judge Hupp: "[t]he city had its choice. They sat down and determined that their best interest and the best interest of its citizens was not to litigate this thing to the bloody end, but to use their power to settle litigation, to settle here in a way where both parties, gave up some strongly held beliefs in that contract, which is, of course the hallmark of a compromise settlement, and settled the litigation"). The City argues that the background of the settlement agreement "is a trenchant illustration of the City's good faith in settling with the Congregation" and that this good faith is a special circumstance justifying a denial of attorneys' fees.

Furthermore, the City argues that the balance of equities favors a denial of attorneys' fees in this action. The City argues in particular that the LRNA "are not the innocent victims of the settlement agreement they are portraying themselves to be. They could (and should) have intervened [in the *Congregation Etz Chaim* action] but failed to do so." Opp'n at 8. The City argues that "[t]here is no doubt that had the League intervened in the underlying Congregation action, there would not have been a settlement." Opp'n at 9. Furthermore, the City argues that the LRNA has already been awarded

poses of conferring jurisdiction. Mot. at 10, citing *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 523 (9th Cir.1989) ("the ultimate lack of

merit of the federal claim does not *mean that the claim was insubstantial for purposes of conferring jurisdiction ").*

$116,319.90 in attorneys' fees and costs by the Ninth Circuit, and that the balance of the equities renders a further award inappropriate. Opp'n at 10.

In addition, The City argues that the Court brokered the settlement agreement and approved its language and substance, and therefore, this approval was the superseding cause of the alleged wrong to LRNA. Opp'n at 11, citing *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir.1989) ("federal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field"); *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir.2004) ("an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about"); *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir.2005) ("an intervening decision of an informed, neutral decision-maker 'breaks' the chain of causation").

■ The LRNA counters that the City argued this issue to the Ninth Circuit and necessarily lost, and that, therefore, the law of the case dictates that fees are not unjust in this action. Mot. at 4. The Court agrees. The City raised similar arguments regarding its good faith, the LRNA's duty to intervene in the *Congregation* action, and the Court's role in the settlement agreement in the Ninth Circuit proceedings, and necessarily by implication lost on these arguments. *See* Pl's Ex. B

(City Ninth Circuit Opp'n) at 10–13. Furthermore, even if the law of the case did not dictate such a finding, the City has failed to establish that an award of attorneys' fees would be unjust. First, the City's argument regarding its good faith is insufficient, given that "[t]here are several reasons ... for accepting the prevailing view that good faith by itself is not a special circumstance justifying a denial of attorney's fees." *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir.1981).[3] Furthermore, the Court finds the City's argument regarding causation and the LRNA's failure to intervene to be unpersuasive and insufficient to satisfy the narrowly construed "special circumstances" test.[4] *See Herrington*, 883 F.2d at 743.

### C. Reasonableness of the Fees

#### 1. Extent of LRNA's Success

■ "The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir.2003). The Court must consider first "whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded. Claims are 'unrelated' if they are 'entirely distinct and separate' from the claims on which the plaintiff prevailed." *Id.* (internal citations omitted). Second, the Court must consider whether plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *McCown v.*

---

**3.** The LRNA also argues that the City has failed to demonstrate it acted in good faith, given its decision to enter into the Settlement Agreement was made in City Council proceedings closed to the public. Reply at 7.

**4.** The LRNA also argues that the City's argument regarding causation are irrelevant, because the required causal connection for an

award of attorneys' fees is that actual relief on the merits materially alter the relationship between the parties. *See Bennett v. Yoshina*, 259 F.3d 1097, 1100 (9th Cir.2001) ("to qualify as a 'prevailing party' under 42 U.S.C. § 1988 a party must obtain a judicially sanctioned change in the legal relationship of the parties").

*City of Fontana,* 565 F.3d 1097, 1103 (9th Cir.2009).

However, "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown,* 565 F.3d 1097 (9th Cir.2009). Instead, the Court should proceed to the second prong of the analysis "and focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Success is measured not only by the amount of the recovery but also in terms of "the significance of the legal issue on which the plaintiff prevailed and the public purpose the plaintiff's litigation served." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996); *see also McCown,* 565 F.3d 1097 ("in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society ... The Supreme Court has likewise indicated that when a decision has served the public interest by vindicating important constitutional rights an award of attorney's fees that is disproportionate to the actual damages may be appropriate").

The LRNA argues that "by succeeding on the central issue presented—obtaining a determination that the Settlement Agreement is invalid—they achieved an excellent result which has a substantial and far reaching public benefit. The result achieved is a significant victory for every citizen who depends, socially and financially, on the protection of zoning laws and the City's adherence to the rule of law." Mot. at 14, citing *Wells Fargo Bank v. Town of Woodside,* 33 Cal.3d 379, 386, 189 Cal.Rptr. 41, 657 P.2d 819 (1983) ("zoning regulations ... reflect the public's interest in controlling development to protect health and safety"); *Golden Gate Water Ski Club v. County of Contra Costa,* 165 Cal.App.4th 249, 259, 80 Cal.Rptr.3d 876 (2008) ("In the field of zoning laws, [the courts] are dealing with a vital public interest-not one that is strictly between the municipality and the individual litigant. All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans ...").

The City, however, argues that out of nine claims in the LRNA's SAC, the City succeeded on only one claim: the third claim seeking a declaratory judgment that the settlement was void under state law. Opp'n at 13. The City reiterates its argument that this third claim is unrelated to the federal constitutional claims brought by the LRNA, as well as its state statutory and constitutional claims. Opp'n at 13. Specifically, the City argues that if the LRNA had had to prove a § 1983 violation, it would have had to have proved a higher level of culpability on the part of the city, and that it could not have met this burden." Opp'n at 1.[5] Furthermore, the City argues that "[b]ecause the League's equal protection claim does not involve a suspect classification, the City's conduct 'will survive constitutional scrutiny ... as

---

**5.** To support this argument, the City cites *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1407 (9th Cir.1989) (overruled on other grounds by *Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996)) ("To establish a violation of substantive due process, the plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare ..."). However, the LRNA notes that it asserted a procedural due process claim, not a substantive due process claim. Reply at 15.

long as it bears a rational relation to a legitimate state interest.'" Opp'n at 14, quoting *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir.1996). The City argues that it is evident that the LRNA pursued these federal claims solely to support its fee request. Opp'n at 14–15.

In addition, the City argues that the LRNA has obtained limited success, because "the decision hardly makes any historical or land mark impact. For one, the ruling does not vindicate any important constitutional right; it is confined to limited issue of state law. Similarly most decisions deemed insuring to the 'public benefit' pertain to federal constitutional or statutory rights; this matter does not." Opp'n at 15.,

The Court, however, finds the City's arguments unpersuasive. As stated elsewhere herein, the federal and state claims herein were derived from the same nucleus of operative facts, and therefore "the court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *See McCown*, 565 F.3d 1097. Furthermore, the LRNA succeeded on the central issue presented: obtaining a determination that the Settlement Agreement is invalid. As the LRNA argues, "[p]laintiffs can not be punished because the Ninth Circuit observed its duty to avoid constitutional questions and decided the case on state law grounds." Reply at 16.

### 2. Lodestar

■■■■ "In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir.2006). The lodestar method "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* After making that computation, the Court then assesses "whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors." *Id.* The twelve factors are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* However, only in rare instances should the lodestar figure be adjusted on the basis of these considerations. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir.1994).

■■■ The LRNA argues that its request for $352,011.40. is adequately supported. The most significant portion of the fees requested are for Leslie M. Werlin ("Werlin"), a civil litigator who has been in practice in Los Angeles since 1976 (589.65 hours at an hourly rate of $365), and Professor Marci A. Hamilton ("Professor Hamilton"), a member of the Pennsylvania bar admitted in 1990 and a law professor (98 hours at an hourly rate of $500). Furthermore, the LRNA requests fees for the work done by the following attorneys: David B. Van Etten (29.56 hours at an hourly rate of $350); Mitchell F. Ducey (136.61 hours at an hourly rate of $230); Amber Y. Sakai (12.1 hours at an hourly rate of $125); Deborah F. Birndorf (7.2 hours at an hourly rate of $240); Marc Paul Jacobs (2 hours at an hourly rate of $285); Sidney K. Kanazawa (.5 hours at an hourly rate of $300); Keith A. Sipprelle (.65 hours at an hourly rate of $280); Herbert M. Weiser (1.5 hours at an hourly

rate of $250); Reen Furutani (Yuba) (.5 hours at an hourly rate of $150); Cris Armenta (9.5 hours at an hourly rate of $250); and Joan A. Wolff (3.5 hours at an hourly rate of $370). In addition, the LRNA seeks fees for the work of legal assistant Jeremy D. Krant (10.7 at an hourly rate of $115) and paralegal Glen A. Davis (.8 hours at an hourly rate of $145). The LRNA also seeks fees for the work of Darrel Menthe (13.7 hours at an hourly rate of $435) and Werlin (33 hours at an hourly rate of $365) in preparing the instant motion and reply, and for appearing at the June 15, 2009 hearing.

The LRNA argues that the Ninth Circuit has already necessarily found the rates of Werlin, Hamilton, and Davis to be reasonable, because such rates were used in the calculation of the appellate attorneys' fees award, and their reasonableness is therefore the law of the case. Mot. at 16, n. 7. In addition, the LRNA submits a certified copy of the declaration of David Roberts ("Roberts"), a certified public accountant who published a survey of law firm compensation and benefits, which was submitted in *Streisand v. Adelman,* Los Angeles Superior Court Case No. SC0772. Roberts Decl. ¶ 1, 3. Roberts states that at a law firm composed of 76 or more attorneys located in Southern California "the average billing rate for; (a) an equity partner is $400; (b) a non-equity partner is $259; (c) a fourth year associate is $224; (d) a third year associate is $212; and (e) a second year summer associate is $138. The average billing rate for a legal assistant (exempt for overtime) with 11 to 20 years experience is $128 in the Century City/Beverly Hills area." Roberts Decl. ¶ 8.

The LRNA also seeks $18,266.35 in expenses, including photocopying, facsimile, transcripts, legal research, parking, filing fees, messenger services, mileage, postage, delivery, telephone, and Professor Hamil-

ton's travel expenses. Werlin Decl. at 10; *see Dang v.Cross,* 422 F.3d 800, 814 (9th Cir.2005) ("[u]nder § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'").

The City argues that the LRNA's fee request is excessive, because the LRNA incurred many fees on the federal constitutional and statutory claims, the continued pursuit of which "became unnecessary early in the lawsuit." Opp'n at 16. The LRNA counters that "[t]he relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Reply at 17, quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992).

The City further argues that the following aspects of the fee request are excessive: (a) the number of attorneys working on the case; (b) legal research in the amount of $5,743.95, where there is no breakdown as the issues researched; (c) the 98 hours billed by Professor Hamilton (arguing that it was unnecessary to have a constitutional law professor work on the relatively simple and narrow state law issue); and (d) Professor Hamilton's $3,931.35 in travel expenses. Opp'n at 16–17. The LRNA counters that Professor Hamilton worked on the federal constitutional issues, and appeared at hearings where all claims were at issue. Reply at 18–19. The LRNA further argues that prior to March 2004, there was no focus on state law issued in this case, and that state law issues did not come to the forefront until *Trancas* was decided in 2006. Reply at 19.

The Court finds the hourly rates charged by the attorneys in this action and the total number of hours expended on the

litigation to be reasonable and adequately supported by the accompanying evidence. The City presents only conclusory arguments, which do not provide any basis for determining that the LRNA should not be granted the full amount requested.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS LRNA's motion for award of attorneys' fees. The Court hereby awards $352,011.40 in fees to the LRNA.

IT IS SO ORDERED