[Civ. No. 6627. Fifth Dist. May 12, 1983.]

HEATHER B. PESCOSOLIDO, a Minor, etc., et al.,
Plaintiffs and Respondents, v.
EUGENE SMITH, as Planning Director, etc., et al.,
Defendants and Appellants.

966

**COUNSEL**

Thomas W. Bowman, County Counsel, and Robert W. Pike, Deputy County Counsel, for Defendants and Appellants.

Richard B. Isham and Isham & Macias for Plaintiffs and Respondents.

OPINION

**BROWN (G. A.), P. J.**—The Planning Director of the County of Tulare appeals from an order of the superior court which reversed a decision of the Tulare County Board of Supervisors (Board). The Board had held the Pescosolidos, in making certain gift deed conveyances to their children, violated the Subdivision Map Act and county ordinances and refused to order issuance of a certificate of compliance pursuant to Government Code section 66499.35 for parcels created by the conveyances. The Pescosolidos petitioned the superior court for review of the Board's decision pursuant to Code of Civil Procedure section 1094.5.

In his findings of fact and conclusions of law the trial judge stated: "(3) Petitioners' right to dispose of their property is a fundamental right protected by state and federal constitutional provisions; accordingly, this Court must apply the independent judgment test in reviewing the record of the proceedings before the administrative bodies involved.

"(4) The Parcel Map Committee and Board of Supervisors committed an abuse of discretion because the findings adopted by each are not supported by the weight of the evidence: the record of the proceedings before said bodies did not support their respective findings that the property in question was conveyed by deeds of gift for the purpose of sale."

■■■ We will hold that the trial court erred in applying the independent judgment test to review of the Board's decision and that the correct test is the substantial evidence test on the whole record; applying the latter test to the Board's determination, it is supported as a matter of law.

FACTS

By way of gift deeds dated March 31, 1978, Carl Pescosolido and Richard Pescosolido (their respective wives joining), who owned a 37.60-acre parcel of land in common, conveyed separate parts of that parcel to six children, retaining a seventh part. Thereafter, the recorded title to the parcels, varying in acreage between 3.4 acres and 5.61 acres, appeared in seven separate names.

In connection with effectuation of a land use plan adopted by the county in December 1975, a moratorium on acceptance of parcel map applications was established effective March 2, 1978, and the subject land was subsequently (effective May 25, 1978) zoned "AE-20 (Exclusive Agricultural—20 acres minimum)." The moratorium effectively prevented the division of the subject land into parcels smaller than 20 acres.

Prior to December 1977 the Pescosolidos had consulted with a civil engineer experienced in subdivision matters and discussed the creation of smaller parcels from the 37.60-acre lot. It was Carl and Richard Pescosolido's practice to make gifts to their respective children from time to time for estate planning and tax purposes, and they wished to give portions of the 37.60 acres to the children for these purposes. The Pescosolidos and the engineer discussed the alternatives of filing parcel maps or using gift deeds to accomplish the subdivision of the 37.60-acre lot, and decided on the latter method because it was less expensive. Carl intended to provide the land to his children, who were nearing adulthood, so that they would have flexibility in financing their college educations. The donors testified it was not their intent to sell the parcels being given to their children, and the parcels were not offered for sale. Carl testified one of his children was in the habit of selling gifts given to him by Carl and might sell his parcel.

On July 27, 1978, the Tulare County Planning Department received a letter from a title company in which the author of the letter stated that the Pescosolidos wished to sell two portions of the 37.60-acre lot that had been deeded to the Pescosolido children. An offer to purchase one parcel was received and placed in escrow. Thereafter, pursuant to Government Code section 66499.35, the Pescosolidos filed applications for certificates of compliance as to the six portions of land deeded to the children; and after a hearing before the parcel map committee, these applications were denied and the lots created by the six deeds were held to be in violation of Tulare County ordinances governing subdivision of land.

The parcel map committee determined that the Pescosolidos had decided to subdivide the property by gift deeds, rather than by filing a map, because their subdivision by gift deeds would be exempt from compliance with the Subdivision Map Act, because fewer improvements would be required, and the value of the property and the value of the gifts to their children would be increased. The committee found the intent of the Pescosolidos was to divide the property for purpose of sale, whether immediate or future.

On appeal by Pescosolidos to the Board, the Board affirmed the decision of the parcel map committee.

### DISCUSSION

As noted, the trial court applied the independent judgment test established in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] (see *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]), proceeded to reweigh the evidence and reversed the Board's decision.

Initially it need be noted that the older Pescosolidos were not prohibited from conveying their property to their children. The property could have been granted in undivided interests. Indeed, the grants to the children of specific parcels were not invalid so long as they used the property for agricultural purposes. The restriction imposed was a prohibition against division in distinct parcels for the purpose of present or future sale or development. The prohibition is against transfer in discrete units for subdivision development without complying with the Subdivision Map Act.[1]

Accordingly, we are not dealing with an absolute prohibition against the right to alienate property or the right to make *inter vivos* or testamentary gifts to one's children which very well could involve a fundamental and vested right. It is more accurate to ask whether a county's refusal to permit owners of land to divide it into discrete parcels without seeking local governmental approval substantially affects or involves the right to make gifts of that land. Essentially, the Pescosolidos were not permitted to transfer ownership of distinct, independently salable and developable units of land without complying with the statutory requirements for the creation of such units. The issue therefore is whether the Pescosolidos had a fundamental vested right to alienate their property *in a particular manner.*

■ It is established that landowners have no vested right in any particular use of their property unless the restrictions on use constitute an uncompensated taking. (*Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708 [129 Cal.Rptr. 417].) A landowner's right to develop his property vests only when he has obtained government permission for the particular mode of development and has begun such development in good faith reliance thereon. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].) Zoning of land is not a "taking" by the government unless it deprives the owner of substantially all reasonable uses of his property. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25].) Indeed, it has been flatly held that"[c]ases involving land use regulation do not affect fundamental vested rights. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 510 [113 Cal.Rptr. 836, 522 P.2d 12]; *City of Walnut Creek* v. *County of Contra Costa* [(1980) 101 Cal.App.3d 1012, 1016 (162 Cal.Rptr. 224)].)" (*Krater* v. *City of Los Angeles* (1982) 130 Cal.App.3d 839, 844 [181 Cal.Rptr. 923].)

Thus, it must be concluded that government power to regulate land use is so important that no vested right to a particular use arises until the government has

---

[1]Government Code section 66424, in pertinent part, defines a subdivision as follows: " 'Subdivision' means the division, by any subdivider, of any unit or units of . . . land . . . for the purpose of sale, lease or financing, whether immediate or future . . . ."

approved that specific use. ■ The right to convey distinct salable parcels to one's children for sale or development does not vest until the government agency responsible approves creation of the parcels conveyed.

It must also be concluded that the right to convey salable parcels to one's children is not fundamental. Every interest that a parent has in transferring ownership of land to his offspring is satisfied by the mere passing of title, except as to the market value of the ownership transferred. Thus, as mentioned, transfer of ownership to the Pescosolido children could have been accomplished by the conveyance of undivided interests. The elder Pescosolidos' desire to provide their children with a gift of maximum monetary value was certainly an understandable and admirable expression of familial devotion, but the specific objective of maximization of market worth does not outweigh the interest of the public in land development regulation and is not important enough to require full and independent review by the courts. It was therefore error for the trial court to apply its independent judgment and reweigh and evaluate the evidence before the Board.

It follows that the trial court should have upheld the Board's determination if it was supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Davis* v. *California Coastal Zone Conservation Com., supra,* 57 Cal.App.3d 700, 706.) ■ The trial court's review of the administrative decision is substantially the same as that involved in the appellate process.

The parcel map committee made certain findings which were adopted by the Board. Those findings include a determination that the purpose of the gift deeds to the children was to provide them with investment property and to increase the value of the property by the subdivision; a further purpose was to divide the property for purpose of sale by or for their children, whether immediate or future; it was determined that it was the intent of the Pescosolidos to circumvent the map filing and approval provisions required under the Subdivision Map Act and the Tulare County ordinances enacted pursuant thereto.

The substantial evidence rule requires the trial court to start with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) The burden is upon the appellant to show there is no substantial evidence whatsoever to support the findings. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823 [152 Cal.Rptr. 98].) ■ The trier of fact (the Board in this instance) is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; it is the sole judge of the credibility of the witnesses; may disbelieve them even though

they are uncontradicted if there is any rational ground for doing so, one such reason for disbelief being the interest of the witnesses in the case; and, in the exercise of sound legal discretion, may draw or may refuse to draw inferences reasonably deducible from the evidence. (*Johnson* v. *Pacific Indem. Co.* (1966) 242 Cal.App.2d 878, 880 [52 Cal.Rptr. 76].)

 Applying these principles to the instant case, the evidence supporting the Board's findings was abundant.[2] That evidence showed that at least one of the parcels was offered for sale, and an offer to purchase was received within four months of the execution of the deeds; indeed, the conveyors and donees by this action seek to compel the county to issue a certificate of compliance demonstrating to potential buyers that the land conveyed could be purchased and developed with governmental approval. The evidence showed further that the Pescosolidos had considered the filing of parcel maps of the subject property as early as December 1977. However, the zoning of the property at that time (A-1 zone) prohibited a subdivision into lots of less than five acres in size. Carl Pescosolido testified before the Board that his intention was to provide flexibility to his children in financing their college educations, and that he would not be surprised if one of the donees sold the parcel given to him immediately. Richard Pescosolido testified that the gift deed method of dividing their property was chosen after a discussion with civil engineer Strauss because it was less expensive than any other method. Strauss testified that it would have been much more expensive for the Pescosolidos to follow the procedure mandated by the subdivision statutes.

We conclude that the evidence was more than sufficient to support the decision of the parcel map committee and the Board.

The Pescosolidos contend that a voluntary conveyance by gift deed without consideration is not subject to the rules governing subdivisions because the original intention is to donate rather than to sell.

A "subdivider" is defined in Government Code section 66423 as one "who proposes to divide, divides or causes to be divided real property into a subdivision for himself *or for others* . . . ." (Italics added.)

As heretofore noted, a "subdivision" in relevant part is defined by Government Code section 66424 as: ". . . the division, by any subdivider, [of land] . . . for the purpose of sale, . . . whether *immediate or future* . . . ." (Italics added.)

---

[2]Though there was no record of the testimony before the parcel map committee, the evidence presented to the parcel map committee was summarized before the Board, and the Board took some additional evidence.

In *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602 [40 Cal.Rptr. 505], 12 landowners owned land in undivided interests. For the purpose of avoiding the Subdivision Map Act they obtained a court order partitioning their property and then argued that the division of land occasioned by the partition was not subject to approval by the local authorities. The court held that the landowners had acted voluntarily, had themselves caused the subdivision, even though "approved" by a court in partition proceedings, and thus were subject to the rules applicable to subdivisions. The court proceeded to point out the salutary purposes of the Subdivision Map Act as being "to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas [citations]; to require subdivider to install streets [citations]; to require subdivider to install drains [citation]; to prevent fraud and exploitation [citation]; and to protect both public and purchaser [citations]." (*Pratt* v. *Adams, supra,* 229 Cal.App.2d at p. 606.) The court concluded that these purposes would be defeated if the courts were to recognize avoidance of the statutes by such methods.

■ By an equivalency of reasoning we also conclude that the effort here to avoid the Subdivision Map Act and county ordinances pertaining to land use by gift deeds of discrete parcels must be disapproved. The court must look to the substance of the transaction and not its form to determine if the legislative purposes underlying the Subdivision Map Act are violated. If landowners acting with bona fide donative intent are permitted to divide their lands without regard to the subdivision statutes, local control of land use will evaporate.[3]

We conclude that in order to effectuate the purpose of the Subdivision Map Act, the phrase "for the purpose of sale, . . . whether immediate or future" in the definition provided by Government Code section 66424 must encompass the *ultimate* purpose for which the particular land division is done. In the case of a bona fide gift, if the gift is of a distinct, independently developable and salable parcel, the ultimate purpose—eventual development and sale—is revealed by the form of ownership transferred and the intent of the conveyors, a form selected to maximize the market value and marketability of the land conveyed. The fact that the donor does not himself intend to sell the land which is the subject of the gift does not change the ultimate purpose for creating the gift parcel.

---

[3]We note that the trial court felt that the subdivision of land in the present case could have been accomplished without the approval of local government if it had been pursuant to a testamentary disposition. Without expressing an opinion on the trial court's premise, the intervention of death, and in some situations, the probate court, is sufficient difference between *inter vivos* and testamentary disposition to justify application of the Subdivision Map Act to the former. (See, e.g., *Wells Fargo Bank* v. *Town of Woodside* (1983) 33 Cal.3d 379, 389 [189 Cal.Rptr. 41, 657 P.2d 819].)

Accordingly, we conclude the transfers herein were subject to the Subdivision Map Act and the local ordinances enacted pursuant thereto, and the trial court erred in holding to the contrary.

The judgment is reversed, and the trial court is directed to deny the petition for writ of administrative mandamus.

Andreen, J., and Hamlin, J., concurred.

A petition for a rehearing was denied June 1, 1983, and respondents' petition for a hearing by the Supreme Court was denied July 13, 1983.