Filed 12/23/14  Versailles HOA v. Haraszti CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE VERSAILLES HOMEOWNERS ASSOCIATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TEGZE HARASZTI, <br><br> Defendant and Appellant. | G049262 <br><br> (Super. Ct. No. 30-2012-00598458) <br><br> ORDER MODIFYING OPINION; DENYING REHEARING AND DENYING REQUEST TO PUBLISH; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on November 26, 2014, be modified as follows:

1.      On page 14, in the paragraph that begins "Haraszti's block record citations . . . ," insert a new penultimate sentence to the paragraph as follows:  "The parties' conduct reflects that the issue of attorney fees in the HOA's complaint had not yet been decided, and therefore a judgment had not yet been rendered."

2.      On page 15, in the first sentence of the paragraph that begins "Finally, Haraszti argues for the first time on appeal . . . ," delete the words "for the first time on appeal".

3.      On page 15, in the paragraph that begins "Finally, Haraszti argues . . . ," insert a new sentence after the citation "(Former Civ. Code, § 1369.520, subd. (a).", as follows:  "Haraszti does not specify in his opening brief where he preserved this argument; it is therefore forfeited.  (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; *People v. Partida*, *supra*, 37 Cal.4th at p. 435; *City of Lincoln v. Barringer*, *supra*, 102 Cal.App.4th at p. 1239 & fn. 16.)"

4.      On page 15, in the paragraph that begins "Finally, Haraszti argues . . . ," in the sentence that begins "The statue also specifies, however . . . ," change the word "however" to "in any event".

The petition for rehearing is DENIED.

Respondent requested that our opinion, filed November 26, 2014, be certified for publication.  Our opinion does not meet the standards identified in California Rules of Court, rule 8.1105(c).  The request is DENIED.

Pursuant to California Rules of Court, rule 8.1120(b), the clerk is directed to forward a copy of our opinion, this order and the request for publication to the Supreme Court.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.


2

Filed 11/26/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE VERSAILLES HOMEOWNERS ASSOCIATION,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>TEGZE HARASZTI,<br><br>     Defendant and Appellant. | G049262<br><br>(Super. Ct. No. 30-2012-00598458)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

Tegze Haraszti, in pro. per., for Defendant and Appellant.

Tinnelly Law Group and Bruce R. Kermott for Plaintiff and Respondent.

\*          \*          \*

Tegze Haraszti appeals the trial court's attorney fee award in favor of the Versailles Homeowners Association (the association or HOA) after it prevailed in its lawsuit against Haraszti by securing a permanent injunction to prevent him from interfering with the HOA's obligation to repair his condominium balcony. Haraszti's challenges are without merit, and we therefore affirm the fee award.

I

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with the standard of review, we set out the facts in the light most favorable to upholding the order or judgment on appeal. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 229; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 370, pp. 427-428 ["'All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact'"].)

As the expiration date loomed on city building permits the HOA had secured to repair or replace the support beams of several balconies plagued with dry rot and termite damage, and protracted discussions with Haraszti to ensure access to his balcony failed, the HOA filed this lawsuit to enforce compliance with the HOA's governing documents. Those documents included covenants, conditions, and restrictions (CC&Rs) that required the HOA to "[m]aintain, repair, replace, [and] restore" portions of the property, including the balcony support beams that constituted "bearing walls, columns, girders, subfloors . . . and foundations." The CC&Rs authorized the association's "Entry for Repairs" into areas "necessary in connection with any maintenance . . . or construction for which the Association is responsible," and provided, "No Owner shall do any act or create any obstruction which would unreasonably interfere with the right or ability of the Association to perform any of its obligations . . . ." (Underlining omitted.) The CC&Rs vested the HOA with authority to conduct and control authorized repairs, including "the authority to employ a manager or others

persons and to contract with independent contractors or managing agents to perform all or any part of the duties and responsibilities of the Association . . . ."

The CC&Rs authorized the HOA to enforce the association's governing documents "by appropriate means, including . . . the employment of legal counsel and the commencement of actions." The CC&R's enforcement terms expressly stated the association and each homeowner "shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, [and] reservations . . . *and in such action shall be entitled to recover costs and reasonable attorneys' fees as are ordered by the Court . . . .*" (Italics added.)

Alleging Haraszti's intransigence in withholding access to his balcony for repair work violated the CC&Rs, the HOA filed its complaint against him in September 2012 for nuisance relief, a declaratory judgment, and an injunction barring further interference. The complaint alleged "Haraszti has failed to cooperate with the Association's efforts to repair the structural elements of [his] balcony," by "deny[ing] the Association access to his balcony, and prevent[ing] the Association from installing a plywood safety barrier between Haraszti's sliding glass door and the deck of the Haraszti balcony." According to the HOA's contractor, as detailed in the complaint, "this plywood barrier is necessary to prevent Haraszti, [and] his guests and/or invitees, from accidentally stepping onto the balcony deck during structural repairs."

The complaint noted the HOA had "made numerous oral and written demands on Haraszti to permit the Association access to his balcony," and had "explained to Haraszti that, except for installation of the plywood safety barrier, the Association d[id] not foresee any need to enter into the Haraszti Unit during the structural balcony repairs." Nevertheless, according to the complaint, Haraszti "refus[ed] to cooperate with the Association's structural repair efforts unless the Association met a list of demands, which included appointing Haraszti to 'lead, manage and contract the test, design, construction and administrative works that affect his condominium' and to pay

3

Haraszti 'reasonable relocation costs,'" which the association asserted were barred under former Civil Code section 1364 ["costs of temporary relocation during [requisite association] repair and maintenance . . . shall be borne by the owner of the separate interest affected"].

The HOA explained in its prayer for relief that money damages were inadequate relief and therefore sought to enjoin Haraszti "from his further refusal to perform under the terms of the Governing Documents" and "an order directing Haraszti not to interfere with the installation of a plywood safety barrier between his sliding glass door and balcony deck for a period of approximately four (4) weeks while the Association's licensed contractors perform the necessary structural repairs to Haraszti's balcony." The complaint expressly sought attorney fees and costs.

The HOA attached to the complaint recent correspondence illustrating the impasse with Haraszti, who on the eve of the complaint had rebuffed the association's latest proposed repair date in late August 2012. The correspondence reflected Haraszti's demands that the HOA "appoint [him] to lead, manage and contract the test, design, construction and administrative works that [a]ffect[] his condominium unit directly or indirectly" and pay his "relocation costs . . . to protect his health and living standards, i.e., costs of hotel in Newport Beach . . . or of other accommodation equivalent with his own . . . for three weeks of repair time . . . ." In another letter, Haraszti demanded that the HOA "Limit the length of construction to two (2) weeks," "Avoid penetration into [his] private airspace," "Comply with all laws, regulations and codes pertaining to construction," "Protect [him] against the damaging effects of asbestos," and "Pay [him] $2,000 for relocation costs." Haraszti "outline[d]" in other correspondence "the huge legal, financial, health and ethical responsibilities of the association board," and insisted he "does not want to be a victim of construction-work-induced nuisance and asbestos effects." He claimed the association's repair work "adversely [a]ffected" the "[h]ealth, living standards and safety of an estimated 110 people" in the complex, and on appeal

4

pegs the number of potential victims variously at 1,000, or 20,000 or between 25,000 and 50,000 — presumably from alleged asbestos exposure.

The HOA's lawyers in a fruitless reply warned Haraszti he would be responsible under the CC&Rs for attorney fees and costs to compel his compliance with the repairs, and explained his demands lacked merit. Specifically, the HOA was not required to pay relocation expenses; it would oversee the repair work, not Haraszti; its licensed, bonded, insured, and professional contractors would ensure "compliance with all local, State and Federal regulations related to construction, building, hazardous materials, electricity, etc." regardless of any cajoling by Haraszti; nor would there be any "penetration into your private air space" because the "structural repairs to your balcony should be able to be made from the Unit below without the need to enter your Unit." The HOA also explained that while the repairs would be prompt, the experts estimated the repairs would take longer than Haraszti's two-week ultimatum. Haraszti refused to return the "Permission to Enter" form the HOA requested in the event entry was needed to install the plywood barricade, and otherwise declined the HOA's request to "synchronize the construction process."

When Haraszti remained noncompliant despite the complaint, the HOA sought an ex parte temporary restraining order (TRO). The HOA's motion explained Haraszti "will be minimally affected by the construction as all repairs . . . will be performed from the lower Unit with no access to Defendant's Unit required." The HOA also explained that "[t]he possibility of collapse posed by Defendant's balcony set forth in [its expert's declaration] clearly establishes that great and/or irreparable injury may result during this litigation . . . unless the structural beams beneath Defendant's unit are repaired." The construction manager submitted a declaration explaining "asbestos precautions" and "abatement," including air monitoring, would be necessary in the condominium below Haraszti's unit because the balcony support beams originated there and thus required "repairs to the underside of the Harasti balcony from inside" that lower

5

unit. But "no such precautions are necessary [for Haraszti's unit] because there will be no penetration into [that unit]." The construction manager also observed: "Although there will be some sawing and hammering, we do not anticipate much noise from the construction will migrate to the upper Unit. The lower Unit Owners will be withstanding the brunt of the reconstruction activities, and they have been very cooperative and understanding. By comparison, Defendant would seem to have little justification for any complaints."

The trial court granted the HOA's ex parte TRO motion. The order required Haraszti to "Cease from interfering with Plaintiff's Common Area structural repairs to the underside of the balcony attached to Defendant's Condominium Unit, and [¶] Cease from interfering with Plaintiff's installation of a plywood safety barricade outside the sliding glass door to Defendant's balcony in order to prevent access to the balcony deck during structural repairs to the balcony's wood beams which Plaintiff estimates will take four (4) weeks to complete."

At the subsequent hearing on the HOA's requested order to show cause for a preliminary injunction, Haraszti appeared and initially opposed the terms of the TRO. Upon consultation with his attorney, however, Haraszti agreed to stipulate to a permanent injunction. The terms of the permanent injunction essentially restated the TRO terms, precluding Haraszti from interfering with the installation of a plywood barrier or the balcony repairs.

The permanent injunction also adopted the HOA's four-week estimate for repairs, ignoring Haraszti's earlier two-week limitation, and expressly authorized more than four weeks if necessary to complete the repairs. The permanent injunction also reflected the HOA's estimate no entry would be required in Haraszti's unit to conduct the balcony repairs, but allowed for entry if necessary on 48 hours' notice. The permanent injunction also reiterated and adopted the HOA's assessment "that asbestos precautions and asbestos abatement, including, but not limited to air monitoring, asbestos removal,

6

handling and disposal, will be required in performing the Balcony Construction Work in the interior of the [lower] Condominium Unit . . . only," not Haraszti's unit, and that the HOA and its contractors would, as its attorneys earlier explained, "comply with all State, Federal and Local laws, ordinances and regulations," including those specifically for "asbestos precautions and asbestos abatement." The stipulated permanent injunction noted Haraszti "disputes the Plaintiff's right to recover costs and attorney's fees," but recognized "Plaintiff may file a motion for the recovery of costs and attorney's fees, and the Defendant may oppose the motion, in accordance with applicable law."

Haraszti may have had second thoughts about agreeing to the permanent injunction because a week later he filed a claim with the Department of Fair Employment and Housing (DFEH) alleging that on September 13, 2012, the HOA engaged in unfair housing discrimination against him. September 13 was the date the HOA notified Haraszti it was seeking the TRO. According to the HOA, Haraszti's unfounded DFEH complaint exemplified his pattern of "creative ways to add expenses and unnecessary delays to the balcony repairs." The DFEH closed Haraszti's complaint in December 2012 with a "No Basis to Proceed" determination.

Thereafter, the parties agreed the HOA's right to attorney fees and costs remained the only contested issue. The hearing was delayed into July 2013 as Haraszti's attorney sought to withdraw, which Haraszti opposed. The same trial judge who granted the TRO, heard argument on the preliminary injunction, and entered the permanent injunction also heard the fee motion. Following the hearing, the trial court entered a detailed statement of decision awarding the HOA $43,996.50 in attorney fees and costs.

Specifically, the trial court found the HOA "is the prevailing party and has attained its main objectives in this litigation in light of the 10/16/12 stipulated order for permanent injunction. [¶] . . . [¶] The Association argues correctly that it is the prevailing party . . . because it obtained a stipulated permanent injunction requiring Defendant to cease from interfering with: (a) Plaintiff's common area repairs and

7

(b) Plaintiff's installation of a plywood safety barricade outside the sliding glass door to Defendant's balcony." The court reviewed "the timesheets submitted by the Tinnelly Law Group," and found "the requested fees are reasonable in light of the nature, extent, and duration of the litigation." The court rejected Haraszti's argument that "the fees are not reasonable in light of the nature of the litigation, the difficulty, the amount involved, the skill required, and the attention given," observing that "Defendant fails to point to specific billing items that are unreasonable. On the contrary, the total bill is reasonable in light of the work involved." Haraszti now appeals.

## II

## DISCUSSION

Haraszti argues he was entitled to recover *his* attorney fees under the Private Attorney General Act (PAGA; Code Civ. Proc., § 1021.5), but nothing suggests he filed a fee motion of any kind, let alone under PAGA. Issues not raised in the trial court are forfeited on appeal. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.) We may not reverse a lower court ruling absent demonstrated error (Cal. Const., art. VI, § 13; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566), and the trial court does not err "in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.) These rules apply with equal force to appellants appearing in propria persona. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) We also observe that block record citations at the outset of a brief or argument are of no value in piecing together the basis for a party's claim (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16), and any new matters raised in an appellant's reply brief are forfeited. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061-1062, fn. 7.) In light of these principles, the trial court did not err in declining to award Haraszti attorney fees under PAGA when Haraszti failed to preserve the claim.

Haraszti recognizes that former Civil Code section 1354 provides that in "an action to enforce the governing documents" of a homeowners' association, "the

prevailing party shall be awarded reasonable attorney's fees and costs." (Now codified at Civ. Code, § 5975, subd. (c).) But he contends that because temporary restraining orders and injunctions are not themselves "actions," the HOA was not entitled to its fees. The claim is nonsensical. The statutory provisions Haraszti purports to rely on actually recognize that an injunction "may be granted by the court in which the *action* is brought" (Code Civ. Proc., § 525, italics added) and that an action is an "ordinary proceeding" in which "one party prosecutes another for the declaration, enforcement, or protection of a right." (Code Civ. Proc., § 22). That is precisely what occurred here when the HOA filed its lawsuit as an action to enforce the association's governing documents. An "action" is a legal term of art that Haraszti misunderstands; it refers to typical proceedings and causes of action in contrast to "special proceeding[s]" (Code Civ. Proc., § 23) that are not relevant to the standard nuisance and declaratory judgment complaint the HOA filed here. There is no merit to Haraszti's ill-conceived challenge.

Haraszti contends the trial court erred in concluding the HOA was the prevailing party. He insists he was the prevailing party because he succeeded in his "main objective" of "protect[ing] the public and environment[] from the toxic effects of asbestos which were generated by Respondent's demolition and reconstruction work." The trial court has "broad" discretion to "'determine who is the prevailing party.'" (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1152, 1157; see also *Heather Farms Homeowners Assn., Inc. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*) [trial court determines prevailing party "on a practical level" in lawsuits to enforce homeowner association governing documents].) We review the trial court's determination under the deferential abuse of discretion standard. (*Heather Farms*, at p. 1574.)

The trial court did not abuse its discretion in determining the HOA was the prevailing party, not Haraszti. While Haraszti claimed his objective in the litigation was to secure the HOA's compliance with "'all State, Federal, and local laws, ordinances and

9

regulations for asbestos precautions and asbestos abatement,'" the HOA did not contest its obligation to do so. Indeed, even before the litigation commenced, the HOA recognized in correspondence with Haraszti that its contractors were required to "compl[y] with all local, State and Federal regulations related to construction, building, *hazardous materials*, electricity, etc." (Italics added.) Accordingly, the trial court reasonably could conclude that an objective both parties agreed upon *before the suit* did not represent a success Haraszti obtained in court. He pointed to no change in the HOA's position between the date it filed its complaint and the stipulated injunction.

The trial court also reasonably could conclude the HOA was the prevailing party because it succeeded in its litigation objectives while Haraszti failed in securing his pretrial demands. As the trial court observed, the HOA "achieved its primary goal in this litigation, which was to obtain access to the [balcony] unit to conduct repairs and install a temporary protective covering for the sliding glass door on the balcony." The trial court reasonably could conclude that if the HOA had not invoked the judicial process, the impasse with Haraszti would have continued. He recently had sued the HOA in small claims court and lost on his allegations another HOA project damaged his property; he interposed endless objections to the balcony renovations; he withheld consent to the HOA's proposed late August 2012 start date on his balcony; and he refused to return the HOA's requested "Permission to Enter" form in the unlikely event access through his condominium was needed.

Haraszti now claims he was the prevailing party because he kept the HOA out of his living space, but the HOA acknowledged from the outset that access probably would not be necessary. Moreover, the HOA obtained through the court proceedings and ensuing permanent injunction a right of entry into Haraszti's condominium if needed. In contrast, Haraszti did not succeed on his demands that drove the HOA to court: he did not prevent the HOA from proceeding with the balcony project as planned; he did not succeed in his bid to "'lead, manage and contract the test, design, construction and

10

administrative works that affect his condominium'"; nor did he succeed in requiring the HOA to pay his relocation costs. Based on all of the foregoing, the trial court did not abuse its discretion when it concluded the HOA was the prevailing party in the litigation.

Haraszti next argues the trial court erred in failing to give due weight to affidavits he submitted. The claim lacks merit. "The trier of fact . . . is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; it is the sole judge of the credibility of the witnesses [and] may disbelieve them even though they are uncontradicted . . . ." (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970-971.) These principles apply equally to declarations: the trial court must determine "which declarations have the 'ring of truth' and which do not." (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 36, 38.) Put another way, although affidavits are sworn under oath, "'It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it be credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose . . . .'" (*Market Street Ry. Co. v. George* (1931) 116 Cal.App. 572, 576 [trier of fact is sole judge of witness partiality and weight to accord witness testimony].)

Here, the trial court acted reasonably when it put little stock in the two affidavits Haraszti introduced. Specifically, the court noted Haraszti submitted the declaration of Abe Lopez, a former "HOA Board Member[,] to show that the head of the board had a personal vendetta against him and that the contractor hired by the HOA Board was not following asbestos abatement procedures. [¶] He also submits the declaration of Ella Grigorian to prove that he was in Palm Springs and could not have been interfering with the workmen trying to repair the condos." But the trial court

11

concluded: "Quite frankly[,] the declarations are simply not credible. And they are irrelevant in that Plaintiff HOA obtained the primary relief it sought."

The trial court did not err. The fact that Haraszti physically relocated to Palm Springs did not undercut the reality the HOA had succeeded in obtaining the permanent injunction to prevent Haraszti from blocking the project with ongoing objections and by withholding consent to work on his balcony. Similarly, nothing in Lopez's affidavit concerning asbestos or alleged HOA bias changed the fact the HOA obtained its litigation objective to commence the balcony project. In stipulating to the permanent injunction granting the relief the HOA sought, Haraszti essentially severed from the action any claims of HOA bias or past mishandling of asbestos because the stipulation did not address those points.

Rather it granted the relief the HOA sought in filing suit, and nothing in Haraszti's affidavits changed that fact. As noted, the HOA in correspondence with Haraszti *before* the litigation showed no bias when it recognized its contractors were bound to comply with asbestos protections, and Haraszti presented no evidence the HOA then reneged on that promise, requiring litigation to enforce the HOA's duty. To the contrary, given Haraszti's refusal to assent to a late August 2012 construction start date or entry if needed *despite* the HOA's prelitigation recognition of its asbestos-compliance obligation, the trial court reasonably could conclude Haraszti would not cooperate with the HOA's construction plans absent court action. In other words, Haraszti's intransigence remained the sole reason for the litigation and the HOA in obtaining the permanent injunction succeeded in removing that obstacle. In reaching this conclusion, the trial court was the sole judge of the evidence Haraszti submitted, and we may not second-guess its determinations.

Haraszti argues the trial court erred in failing to calculate offsets to the attorney fee award based on $13,212 in alleged damages the balcony renovation caused his unit. This claim has no merit because it had nothing to do with the litigation or the

12

HOA's right to attorney fees. Haraszti did not file a counterclaim based on the alleged damages, nor was the issue raised or litigated before the attorney fees hearing. The damages claim simply had no pertinence to the question of who was the prevailing party on the issues posed and resolved in the complaint the HOA filed. Consequently, the trial court did not err in failing to entertain the offset claim.

Haraszti's belated authentication and other challenges to the HOA's attorney timesheets also fail. Haraszti wades into the Evidence Code for the first time on appeal and challenges the attorney fee award on grounds the HOA did not submit its attorney timesheets as so-called "certificates," failed to properly authenticate the timesheets or the attorney signatures on those timesheets, and failed to prove they were original documents rather than copies. Consequently, Haraszti now insists the timesheets were no better than "fake evidence" and therefore the attorney fee award must be reversed. Haraszti also raises other challenges to the attorney billing records for the first time on appeal; he claims they are replete with disfavored "block billing," prohibited padding of hours billed, and billing or charges "unreasonable in amount" or "unnecessary to conduct the present litigation." Haraszti does not pinpoint any particular charges except to claim for the first time on appeal that some predated the HOA's complaint.

Haraszti provides no record references to suggest he afforded the trial court and opposing counsel the opportunity to consider or meet below any of the evidentiary challenges he now raises. His claims therefore are forfeited. "'It is, of course, "the general rule" . . . "'that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.'""" (*People v. Waidla* (2000) 22 Cal.4th 690, 717; see *Flood v. Simpson* (1975) 45 Cal.App.3d 644, 649 [evidence is competent to support judgment absent specific objection below]; see also Evid. Code, § 353 [no basis for reversal absent objection in trial court].) Additionally, we observe that declarations, testimony or other direct evidence of the reasonable value of counsel's services is not

essential to support an attorney fee award because firsthand evidence of counsel's performance is necessarily before the trial court which hears the case. (See, .e.g., *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 316.) Here, because the HOA submitted its attorney billing records and the trial court had an ample firsthand view of the litigation, Haraszti's belated challenges furnish no basis to second-guess the trial court's fee award.

Haraszti's other challenges are similarly without merit. He claims the attorney fee award cannot stand because the HOA filed a tardy memorandum of costs claiming the fees. He relies on California Rules of Court, rule 3.1700(a), which provides that a prevailing party "who claims costs must serve and file a memorandum of costs *within 15 days after the date of mailing of the notice of entry of judgment or dismissal* . . . ." (Italics added.) He argues the stipulated permanent injunction that the court clerk mailed on October 16, 2012, was tantamount to entry of judgment or dismissal, and therefore the HOA's attorney fees motion in March 2013 fell far outside the 15-day window for a memorandum of costs.

Haraszti's block record citations do not show he preserved this argument, and it is therefore forfeited. We also note the parties expressly agreed in their stipulated permanent injunction that the question of attorney fees remained to be resolved, and both recognized the issue as still pending in case management updates submitted long after the deadline Haraszti now asserts. In any event, attorney fees pursuant to a party's agreement do not require a costs motion where, as here, the prevailing party files a fee motion. (*Kaufman v. Diskeeper Corporation* (2014) 229 Cal.App.4th 1, 11.

Haraszti next argues in a confusing fashion that a showing of "reciprocity" is necessary under Civil Code section 1717 before attorney fees may be awarded pursuant to the parties' agreement. Again, Haraszti fails to demonstrate he made this argument in the trial court and, in any event, there is no merit to his claim. The claim is conceptually flawed because Civil Code section 1717 does not require a *showing* of reciprocity, but

14

instead *provides* a reciprocal right to attorney fees where the parties' agreement omits it. In other words, "section 1717 makes an attorney fee provision reciprocal even if it would otherwise be unilateral either by its terms or its effect." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818 (*Brown Bark*).) A litigant invoking Civil Code section 1717 must demonstrate he or she prevailed in a dispute involving an agreement authorizing attorney fees for the opposing party. (*Brown Bark*, at p. 820.) If the opposing party prevails, he or she need not somehow *demonstrate* reciprocity to obtain attorney fees; to the contrary, the agreement's terms provide for an award of attorney fees. Haraszti's misplaced discussion of Civil Code section 1717 does not preclude the fee award.

Finally, Haraszti argues for the first time on appeal that the attorney fee award was erroneous because the HOA failed to pursue homeowner association alternative dispute resolution (ADR) measures mandated by statute before filing its lawsuit. (Former Civ. Code, § 1369.520, subd. (a).) The statute also specifies, however, that ADR is not a requirement where preliminary or temporary injunctive relief is necessary. (*Id.*, subd. (a)(3).) Based on evidence the structural beams posed a danger of collapse due to termite damage and dry rot, together with evidence the city building permits were due to expire after the HOA already obtained one extension and could not obtain another, the trial court did not err in granting the TRO, and therefore there was no obligation to engage in ADR.[1]

---

[1] The HOA's motion to augment the appeal to show Haraszti paid the attorney fee award is denied.

15

III

DISPOSITION

The fee order is affirmed.  Respondent is entitled to its costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

16