Filed 5/5/22  In re L.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.S. et. al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.S.,<br><br>Defendant and Appellant. | F083608<br><br>(Super. Ct. Nos. 17CEJ300275-2, 17CEJ300275-3, 17CEJ300275-4, 17CEJ300275-5, 17CEJ300275-6, 17CEJ300275-7)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Meghan Grim and Brian C. Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

Appellant R.S. (mother) appealed from the juvenile court's October 29, 2021 dispositional orders removing her six children, ranging from three to 12 years of age, from her custody and denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(3),[1] which allows the court to deny a parent reunification services when the child has been removed multiple times for physical or sexual abuse. After reviewing the juvenile court record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.)

Mother filed a letter but failed to set forth a good cause showing that any arguable issue of reversible error arose from the dispositional hearing. (*In re Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL SUMMARY

*Prior Removal*

In September 2017, then 11-year-old X.S., eight-year-old L.S., seven-year-old Q.B., Jr., six-year-old G.B., four-year-old L.D., and three-year-old C.B. were removed from mother's custody after the two youngest children reported mother and her boyfriend, Eric C., hit the two eldest children with a belt, leaving bruises on their legs and arms. The juvenile court sustained allegations mother was aware Eric was hitting the children but did not intervene. She told the children not to tell their father, Q.B. (father).[2] The children were adjudged dependents and mother and father were ordered to participate in reunification services. In March 2018, mother gave birth to Eric's son, J.C., who was

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Father was the presumed father of Q.B., Jr., G.B., L.D., and C.B. D.H. and R.B. were the alleged fathers of X.S. and L.S., respectively. Their whereabouts were unknown.

allowed to remain in her custody. In October 2019, the court terminated reunification services and returned the children to mother's custody with family maintenance services. In February 2020, the court awarded mother sole legal and physical custody of the children and terminated its dependency jurisdiction.

*Subsequent Removal*

In November 2020, the Fresno County Department of Social Services (department) received a report that mother hit X.S. with an extension cord, causing visible injuries. He also reportedly had old injuries inflicted by mother two days before. Eric found out that law enforcement was contacted and removed J.C. from the residence. The department took the children, except for J.C., into protective custody and mother was arrested. The children were placed in foster homes and the parents agreed to place J.C. with Michelle B., the mother of another of Eric's children. Five days later, X.S. was arrested for felony robbery.

The department filed a dependency petition on the children's behalf, alleging under section 300, subdivision (a) (serious physical harm) mother used inappropriate corporal discipline on X.S., causing injury and placing the other children at similar risk of harm. The petition further alleged under subdivision (b) (failure to protect) that mother had a substance abuse problem with marijuana and exposed the children to domestic violence.

The juvenile court convened the detention hearing on November 24, 2020. The court continued the hearing to the following day and temporarily placed the children in the department's custody. On November 25, mother's attorney requested a contested detention/jurisdiction hearing. The court set a combined contested detention/jurisdiction hearing for December 1, 2020. Meanwhile, mother and Eric took J.C. from Michelle's custody and absconded with him.

On December 1, 2020, mother appeared by video and her attorney declared a conflict. The juvenile court relieved her attorney, appointed new counsel, and continued

the hearing to December 4, 2020. On December 4, mother's newly appointed attorney advised the court that mother was having difficulty joining the hearing via video and asked to continue the hearing. The court granted the continuance to January 26, 2021, but ordered mother to physically appear. The court stated it had issued a protective custody warrant for J.C., who was still in mother's custody. She had written three or four times, stating the court and the department acted in excess of their power in removing her children. She wanted the case dismissed immediately.

*Contested Detention/Jurisdiction Hearing*

Mother appeared via video at the contested combined hearing on January 26, 2021, and testified about the incident with X.S. She was getting J.C. ready to go with Eric when she heard X.S. in the living room cussing. She went to tell him to watch his mouth and noticed he was on social media. She attempted to take his laptop and he tried to pull it out of her hand. She slipped and made another attempt to take the laptop. He "swung" at her and she went to her room and called the police. She denied hitting him with a cord. She denied that Eric lived with her and that he was physically violent with her. She did not know why the children would say that he was. She had injuries because X.S. punched her. She did not give the police permission to enter her apartment or to question the children. She denied using marijuana.

Mother did not understand the department's concerns about the children living with her. X.S. was out of control and was in juvenile hall. She tried to get him help by calling the police chaplain and churches. He was taking courses and getting counseling. She believed she could adequately take care of the children and they wanted to come home.

At the conclusion of argument, the juvenile court ordered mother to surrender J.C. to the department by February 3, 2021, or it was going to issue an arrest warrant for her. Mother explained she arranged for an aunt to take temporary guardianship of J.C. The court told her it had precedence over a guardianship executed outside of the court and the

4.

department. The court ordered the children detained, adjudged them dependents under section 300, subdivisions (a) and (b) and set the dispositional hearing for February 24, 2021. X.S. was adjudged a ward of the juvenile delinquency court and placed under the supervision of the juvenile probation department.

On February 3, 2021, the juvenile court ordered the department to offer mother random drug testing. On that same date, the protective custody warrant was executed and J.C. was taken into protective custody and placed in foster care.

On February 17, 2021, mother filed a letter with the juvenile court, claiming her rights had been violated and asking the court to return the children to her custody. She explained that she contacted law enforcement the day they were removed because X.S. was abusing her. He refused to disconnect from social media while he was supposed to be participating in remote schooling. She took his laptop from him and a struggle ensued. She denied abusing substances and engaging in domestic violence. She believed it unfair to remove her children when she was just asking for help. Meanwhile, her children were suffering. Several of them had contracted COVID-19 and head lice, one was wetting the bed, another had a broken wrist, and X.S. was in juvenile hall. X.S. called her every day and was remorseful. He wanted to go home.

*Contested Jurisdiction/Disposition Hearing*

In its disposition report prepared on February 23, 2021, the department recommended the juvenile court deny mother reunification services under section 361.5, subdivision (b)(3) and order services for father and Eric.

On February 24, 2021, the juvenile court set a settlement conference for April 24, 2021, and a contested disposition hearing for May 12, 2021. The court appointed counsel for Eric, who made his first appearance.

Mother, Eric, and father appeared with their attorneys at the settlement conference on April 21, 2021, and the juvenile court confirmed the contested hearing.

The juvenile court convened the contested disposition hearing on May 12, 2021. After mother's attorney declared a conflict, the juvenile court appointed new counsel and continued the hearing to June 9. On June 9, the court set a contested jurisdiction hearing for J.C. for September 22 and continued the contested disposition hearing for the other children to that same date.

Prior to the hearing, mother's attorney provided minors' counsel questions to ask Q.B., Jr. and L.S. to be admitted in lieu of testimony. Both children stated they loved mother, missed her, and enjoyed their visits. Q.B., Jr. felt safe in mother's care and wanted to be returned to her custody. If he was not returned, he would be disappointed. L.S. would feel safe with mother but "not 100 [percent]." She was not willing to return to mother's custody at that time. She believed mother needed help to control her anger.

In an addendum report, the department advised the juvenile court that although mother was willing to participate in reunification services, she still denied physically abusing the children. The department was also concerned about her ability to benefit from services given her continued use of substances, engagement in domestic violence and use of inappropriate forms of discipline.

The juvenile court accepted the questions provided by mother's attorney and the responses from L.S. and Q.B., Jr. in lieu of live testimony at the contested hearing on September 22, 2021. Mother testified about the incident with X.S. and the laptop. She denied hitting him with a cord. The only injury that she observed on him was a scratch on his arm. She called the police because he was out of control. He left the apartment whenever he wanted. He cursed and smoked "weed" with his friends. She called the police numerous times because of his behavior. In March 2020, he threw a burrito at his sister and went to juvenile hall. Two days before this incident, he threw a chair at her. When she called the police, they said they could not come out because it was not a homicide. Mother was arrested but her criminal case was dismissed. She asked the department for family therapy during the prior dependency case but did not receive it.

6.

She asked again recently. The children had been out of her custody for 21 months and she thought it would help them bond and adjust. Mother disciplined the children by having them stand against the wall, sending them to bed, or removing their devices or television privileges. She also punished them by not cooking a big meal or not letting them have snacks and juice. She never used a belt or an electric cord or anything similar. She learned in her parenting class in the prior dependency case that she could spank the children on the buttocks with an open hand. She was participating in a parenting class and she and X.S. visited unsupervised each week for one to three hours. She learned that she needed to communicate better with her children.

Near the end of the court day and after a break, the juvenile court paused mother's testimony to allow social worker Iliana Hernandez to testify. Hernandez said mother participated in a child abuse course, a parenting class, and a mental health assessment as part of her prior dependency case but had not benefitted from them. The children still reported that she engaged in domestic violence with Eric and physically abused them. The court continued the hearing to October 26, 2021.

Mother resumed her testimony at the continued hearing on October 26, 2021. She was asked how X.S. sustained the marks on his arm. She said they were fighting over the laptop when she fell. She may have scratched him while falling. After she contacted the police from her bedroom, she went out to the living room and found him playing music on the television. She tried taking away his video game console and they struggled. She was able to get the video game console from him but not the power cord. She went into her bedroom and changed her clothes. X.S. had the cord to the video game console. Asked why she took J.C. from Michelle, she said she did not know that she could not take him. She realized it was a mistake and apologized to the department. She denied engaging in domestic violence.

Maternal aunt Kaitlyn S. testified she was with mother and the children every day for the first six months after the court returned them to her custody and she never saw

7.

mother physically abuse them. She was aware mother was having problems with X.S. and L.S. with regard to social media. It was hard to get them to disconnect and to keep them from having contact with father, who was not supposed to have contact with them. She believed mother provided the children a safe home. Eric testified, after which the court heard argument and continued the hearing to October 29, 2021, for its ruling.

The juvenile court adopted the department's recommended findings and orders. The court credited the children's statements that mother and Eric engaged in domestic violence and the neighbors' statements that there was violence in the home and that mother was abusive toward the children. One neighbor described her beating the children. The court found mother and Eric actively tried to hide J.C. and did not give much weight to X.S.'s recantation. The court did not find family maintenance services an appropriate alternative to removal. Nor did the court find that providing mother reunification services served the children's best interests. The court ordered supervised visits for mother twice a month for one hour and set a six- and 12-month review hearing for L.S., Q.B., Jr., G.B., L.D., and C.B. on January 13, 2022, and for J.C. on March 30, 2022.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

The juvenile court's authority to make decisions concerning a minor child derives from section 300. If the court finds, by a preponderance of the evidence, the actions of either parent bring the child within one of the statutory definitions set forth in section 300 and its subdivisions, the court may exercise its dependency jurisdiction over the child. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) Here, the court found the children

8.

came within its jurisdiction under section 300, subdivisions (a) and (b)(1). Subdivision (a) applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally … by the child's parent." The "court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent … that indicate the child is at risk of serious physical harm." Subdivision (b)(1) applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent … to adequately supervise or protect the child, or … provide regular care for the child due to the parent's … substance abuse." (§ 300, subds. (a) & (b)(1).) Because the court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone. (§ 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

After the juvenile court finds a basis for jurisdiction under section 300, it must conduct a dispositional hearing (§ 358). At the dispositional hearing, the court may remove the child from a parental home if it finds, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(l).) If the court removes the child, it must provide the parent reunification services unless it finds by clear and convincing evidence that one of the exceptions listed in subdivision (b) applies. (§ 361.5, subds. (a) & (b).) When one of the exceptions applies, the court may not order reunification services unless the court finds by clear and convincing evidence that reunification serves the child's best interest. (*Id*. at subd. (c)(2).)

Good cause to warrant supplemental briefing in this case would require mother to show that there is no substantial evidence to support the juvenile court's jurisdictional

findings and dispositional orders.  Mother fails to make that showing.  She contends, as she did throughout the proceedings, that her children were wrongfully removed from her custody and that her constitutional rights were violated.  She denied abusing her children or engaging in domestic violence.  She claims X.S. is now in her custody and she completed the services that were not offered to her by the department.  She asks this court to reconsider her case and reverse the juvenile court's ruling that she is unfit to parent her children.

Here, the juvenile court found a sufficient basis to exercise its dependency jurisdiction over the children based on statements it deemed credible that mother was physically abusing them and engaging in domestic violence with Eric.  As the juvenile court is the sole arbiter of credibility, we may not second guess its credibility and evidentiary findings.  (*Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970–971.)  Consequently, we would not disturb its jurisdictional findings even if we were reviewing the merits of its jurisdictional findings.

Further, mother does not challenge the juvenile court's order denying her reunification services under section 361.5, subdivision (b)(3), which applies when "the child or a sibling of the child has been previously adjudicated a dependent pursuant to any subdivision of [s]ection 300 as a result of physical … abuse, that following that adjudication the child had been removed from the custody of the child's parent … pursuant to [s]ection 361, that the child has been returned to the custody of the parent … from whom the child had been taken originally, and that the child is being removed pursuant to [s]ection 361, due to additional physical … abuse."  It is undisputed the children were removed from mother's custody in 2017 because of physical abuse and again in 2020 for the same reason.

Based on the foregoing, we conclude mother failed to set forth a good cause showing that an arguable issue of reversible error exists on this record.  Consequently, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.